# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| Fraternal Order of Police Pennsylvania Lodge, *et al.*, | : : : | No. 2:23-cv-00332-KSM |
| Plaintiffs, | : : | |
| v. | : : | Honorable Karen S. Marston, J. |
| Township of Springfield, *et al.*, | : : : | |
| Defendants. | : : | |

### ORDER

  ***AND NOW***, this    day of      , 2023, upon consideration of Defendants' Motion to Dismiss Plaintiffs' Complaint Pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6) and Plaintiffs' response thereto, it is hereby ***ORDERED*** and ***DECREED*** that the Motion is ***GRANTED***.  Plaintiffs' Complaint is hereby ***DISMISSED*** with prejudice.

          BY THE COURT:

          _____

          Hon. Karen S. Marston, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

|  |  |  |
|---|---|---|
| Fraternal Order of Police Pennsylvania Lodge, *et al.*, | : : : | No. 2:23-cv-00332-KSM |
| Plaintiffs, | : : | |
| v. | : : | Honorable Karen S. Marston, J. |
| Township of Springfield, *et al.*, | : : | |
| Defendants. | : : | |

---

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

*AND NOW*, come Defendants, Township of Springfield, James Lee, Baird M. Standish, Michael E. Maxwell, Susanna O. Ratsavong, Peter D. Wilson, Jonathan C. Cobb, Eddie T. Graham, and A. Michael Taylor (hereinafter "Defendants"), by and through their undersigned counsel, and move this Honorable Court to dismiss Plaintiffs' Complaint pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6), and in support thereof aver as follows:

1.     Plaintiffs initiated this action on January 27, 2023, by filing a Complaint in the United States District Court for the Eastern District of Pennsylvania.

2.     Plaintiffs' Complaint contains a single cause of action pursuant to 42 U.S.C. § 1983, alleging a violation of Plaintiffs' First Amendment rights, as incorporated by the Fourteenth Amendment.

3.     Plaintiffs' Complaint arises from the passage of a Resolution by Springfield Township concerning the use and display of the "Thin Blue Line American Flag" (hereinafter "the Flag") a symbol that originally was designed to show support for members of law enforcement, but which

has been interpreted widely to represent opposition to racial justice movements and which has been coopted by several white supremacist groups.

4.     The Resolution contains three (3) prohibitions:

    a.    The Resolution prohibits Township employees from displaying the Flag on their clothing or skin while on duty or while off-duty and in uniform;

    b.    The Resolution prohibits Township employees from publicly displaying the symbol on personal items in areas of the Springfield Township municipal building in which visiting members of the public are likely to see it; and

    c.    The Resolution prohibits the "installation or affixation" of the Flag on Township-owned property.

5.     As the Resolution does not contain any mechanism for enforcement or contain any method for punitive measures to be taken against the Springfield Township Police Benevolent Association or the Fraternal Order of Police Pennsylvania Lodge, those Plaintiffs cannot demonstrate any risk of an actual injury necessary to establish constitutional standing.

6.     As neither the Springfield Township Police Benevolent Association nor the Fraternal Order of Police Pennsylvania Lodge can establish constitutional standing, the Court lacks subject matter jurisdiction over the claims raised by those Plaintiffs.

7.     Pursuant to FED. R. CIV. P. 12(b)(1), the claims of the Springfield Township Police Benevolent Association and the Fraternal Order of Police Pennsylvania Lodge should be dismissed for lack of subject matter jurisdiction.

8.     As Springfield Township has an inherent right under the First Amendment to control and regulate expressive speech which would be understood to be attributed to the Township,

Plaintiffs cannot use the First Amendment to compel the Township to engage in speech that runs contrary to the stated policy of the Resolution.

9.      As the remedy sought by Plaintiffs would violate Springfield Township's own First Amendment rights, Plaintiffs cannot state a claim for which relief may be granted.

10.     Pursuant to FED. R. CIV. P. 12(b)(6), Plaintiffs' claims should be dismissed for failure to state a claim for which relief may be granted.

        **WHEREFORE**, Defendants respectfully request that this Honorable Court grant this Motion and enter an Order dismissing Plaintiffs' Complaint with prejudice.

                                        Respectfully submitted,

                                        DEASEY, MAHONEY & VALENTINI, LTD.


By:     /s/ *Rufus A. Jennings*
                                        Harry G. Mahoney, Esquire
                                        Pa. Attorney Identification No. 19609
                                        Rufus A. Jennings, Esquire
                                        Pa. Attorney Identification No. 93030
                                        1601 Market Street, Suite 3400
                                        Philadelphia, PA 19103
                                        Phone:  (215) 587-9400
                                        Fax:     (215) 587-9456
                                        Email:  hmahoney@dmvlawfirm.com
                                                rjennings@dmvlawfirm.com

**WISLER PEARLSTINE, LLP**

By: /s/ *James J. Garrity*

James J. Garrity, Esquire
Pa. Attorney Identification No. 26926
Brian R. Elias, Esquire
Pa. Attorney Identification No. 82938
Deborah R. Stambaugh, Esquire
Pa. Attorney Identification No. 325032
Email:  jgarrity@wispearl.com
        belias@wispearl.com
        dstambaugh@wispearl.com

Date: February 21, 2023

<u>**CERTIFICATE OF SERVICE**</u>

I, Rufus A. Jennings, hereby certify that, on the date set forth below, I did cause a true and correct copy of Defendants' Motion to Dismiss Plaintiffs' Complaint Pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6) and Memorandum of Law in Support thereof to be filed with the Court's ECF/PACER electronic filing system, where they were available for immediate viewing and download to the following individuals:

Walter S. Zimolong III, Esquire
James J. Fitzpatrick III, Esquire
**ZIMOLONG, LLC**
P.O. Box 552
Villanova, PA 19085-0552

/s/ *Rufus A. Jennings*

Rufus A. Jennings, Esquire

Date: February 21, 2023

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| Fraternal Order of Police Pennsylvania Lodge, *et al.*, | : : : | No. 2:23-cv-00332-KSM |
| Plaintiffs, | : : | |
| v. | : : | Honorable Karen S. Marston, J. |
| Township of Springfield, *et al.*, | : : : | |
| Defendants. | : : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P.  12(b)(1) AND 12(b)(6)**

*AND NOW*, come Defendants, Township of Springfield, James Lee, Baird M. Standish, Michael E. Maxwell, Susanna O. Ratsavong, Peter D. Wilson, Jonathan C. Cobb, Eddie T. Graham, and A. Michael Taylor (hereinafter "Defendants"), by and through their undersigned counsel, and submit this Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Complaint Pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6).

## I.  Introduction

In response to the Springfield Township Police Benevolent Association's use and public display of the "Thin Blue Line American Flag," Springfield Township (hereinafter "the Township") received numerous complaints from residents who were concerned that this symbol was associated with opposition to racial justice and even with white supremacist groups.  The Township then met with Plaintiffs in an attempt to resolve this issue amicably.  The Township asked that the Police Benevolent Association refrain from using the Thin Blue Line American Flag as part of its logo.  The Township even arranged for private funding to allow the Police Benevolent

Association to replace the Thin Blue Line American Flag in its logo, on its flag, and on its stationary with the Traditional Thin Blue Line Flag, which conveys the same support for the police.

After Plaintiffs refused these attempts at compromise, the Township passed Resolution 1592, which announces the policy of the Township in opposition to the display of the Thin Blue Line American Flag on Township property and by Township employees while on duty or while in uniform.   The Township issued a directive to its employees with three (3) narrowly-tailored restrictions: 1) employees were not permitted to display the Thin Blue Line American Flag on their clothing or skin while on duty or while in uniform; 2) Township employees were not permitted to display the Thin Blue Line American Flag on any personal property inside the Township building while on duty in such a location that visiting members of the public would be likely to see it; and 3) individuals were not permitted to install or affix the Thin Blue Line American Flag to Township property (including vehicles).   These limitations, for which there is no inherent mechanism for enforcement, were designed to ensure that members of the public did not form the belief that the Township itself condoned or approved of the display of the Thin Blue Line American Flag or the negative connotations that the symbol communicates.   The Township's restrictions do not prevent Plaintiffs from displaying the Thin Blue Line American Flag on their clothing or personal property while arriving for or departing from work; from affixing a sticker of the Thin Blue Line American Flag to their personal vehicles; from flying a Thin Blue Line American Flag at their homes; or from the temporary display of the Thin Blue Line American Flag in a park or other public location.

On January 27, 2023, Plaintiffs initiated this action seeking declaratory and injunctive relief preventing the Township from taking any action to enforce the Resolution.   In their Complaint, Plaintiffs grossly misstate the scope and impact of the Resolution on Township employees other than while on duty.   Plaintiffs seek to use this Court to weaponize the First

Amendment to compel the Township to display a symbol of white supremacy on Township property, in clear contravention of the Township's stated policy. This demand ignores the Township's own rights under the First Amendment to control the message which is attributable to the Township and to present a position that supports equality of its residents while still showing support for the Police Department. Further, as there is no mechanism for enforcement of the Resolution as to the Springfield Township Police Benevolent Association or the Fraternal Order of Police Pennsylvania Lodge, those entities cannot show any actual injury sufficient to standing to contest Section Three of the Resolution.

As set forth herein, Defendants now move for dismissal of Plaintiffs' Complaint in its entirety pursuant FED. R. CIV. P. 12(b)(1) and 12(b)(6).

## II.    <u>Factual Allegations of the Complaint</u>[1]

- "Plaintiff, Fraternal Order of Police Pennsylvania Lodge ('PA FOP'), is a nonprofit corporation and association organized to represent the interests of law enforcement officers. The PA FOP is the state lodge of the Fraternal Order of Police, which has more than 2,100 lodges and more than 364,000 members in the United States. The PA FOP has approximately 40,000 members."[2]

- "Plaintiff, Springfield Township Police Benevolent Association ('Springfield PBA'), is an association formed for the purpose of representing the interest[s] of members of the Springfield Township Police Department. Springfield PBA represents the interests of its members in legal, legislative, and labor related matters."[3]

---

[1] For the purposes of a motion filed pursuant to FED. R. CIV. P. 12(b)(6), the Court must accept the factual allegations contained in the Complaint as true. *See e.g. Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3rd Cir. 2008). Nothing contained in these moving papers shall be construed as an admission to any such allegations.
[2] Plaintiffs' Complaint, attached hereto as Exhibit "A", at ¶ 1.
[3] Exhibit "A", at ¶ 2.

- "Springfield PBA has hosted events on property owned by Springfield Township where the Thin Blue Line flag is displayed, depicted, affixed, or installed, by its members or members of the public."[4]

- "Springfield PBA wishes to host events on property owned by Springfield Township in the future where the Thin Blue Line flag is displayed, depicted, used, installed, or affixed to Township property by its members or members of the public."[5]

- "Plaintiff, Christian Wilbur ('Officer Wilbur'), is a police officer employed by the Springfield Township Police Department."[6]

- "Plaintiff, Robert Baiada ('Officer Baiada'), is a police officer employed by the Springfield Township Police Department."[7]

- "Plaintiff, Chris Calhoun ('Officer Calhoun'), is a police officer employed by the Springfield Township Police Department."[8]

- "Officer Calhoun's personal property depicting and displaying the Thin Blue Line flag includes, a decal on the back of his car that he parks on Township property, and clothing that he wears on Township property."[9]

- "Officer Calhoun desires to continue to display and depict the Thin Blue Line flag in the future on his personal property, including personal property located on Township property."[10]

---

[4] Exhibit "A", at ¶ 27.
[5] Exhibit "A", at ¶ 28.
[6] Exhibit "A", at ¶ 3.
[7] Exhibit "A", at ¶ 4.
[8] Exhibit "A", at ¶ 5.
[9] Exhibit "A", at ¶ 32.
[10] Exhibit "A", at ¶ 33.

- "Officer Baiada's personal property depicting and displaying the Thin Blue Line flag includes, "challenge coins" located in his office, a magnet on his refrigerator, a flag flying outside his residence in the Township, and clothing that he wears on Township Property."[11]

- "Officer Baiada desires to continue to display and depict the Thin Blue Line flag in the future on his personal property, including personal property located on Township property."[12]

- "Officer Wilbur's personal property depicting and displaying the Thin Blue Line flag includes clothing that he wears on Township Property."[13]

- "Officer Wilbur desires to continue to display and depict the Thin Blue Line flag in the future on his personal property, including personal property located on Township property."[14]

- "[O]n January 11, 2023, the Springfield Township Board of Commissioners passed resolution number 1592 (the "Resolution")."[15]

- Pursuant to the Resolution:

  - "The 'thin blue line' phrase refers to the line between chaos and order with law enforcement officers as the barrier preventing any further encroachment of chaos upon order;"[16]

---

[11] Exhibit "A", at ¶ 37.
[12] Exhibit "A", at ¶ 38.
[13] Exhibit "A", at ¶ 42.
[14] Exhibit "A", at ¶ 43.
[15] Exhibit "A", at ¶ 52.
[16] Exhibit 3 to Plaintiffs' Complaint.  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3rd Cir. 2010).

o "[T]he traditional 'Thin Blue Line' flag was depicted as a black field with a single, narrow blue line (hereinafter referred to as the 'Traditional Thin Blue Line Flag');"[17]

o "[A] variation of the Traditional Thin Blue Line Flag incorporating a black and white American flag with one blue stripe was subsequently created as a sign of support for law enforcement officers (hereinafter referred to as the 'Thin Blue Line American Flag')";[18]

o "[O]ver time, and partially in negative response to the 'Black Lives Matter' flag, the Thin Blue Lives American Flag has also come to represent opposition to racial justice movements, including the Black Lives Matter cause, and in some instances has become a symbol of white supremacy, and is recognized as such by individuals and communities of color;"[19]

o "[T]he Board of Commissioners has received public comment from many Springfield Township … residents suggesting that any continuing display of the Thin Blue Line American Flag after its usurpation by white supremacist groups, appears to express support for the systematic oppression of certain members of the Township community, notwithstanding the original intent to simply support police departments and their officers;"[20]

o "[T]he publicly visible display of the Thin Blue Line American Flag symbol by Township employees while working for the Township (or off-duty while in uniform) or the installation or affixation of the Thin Blue Line American Flag

---

[17] *Ibid.*
[18] *Ibid.*
[19] *Ibid.*
[20] *Ibid.*

symbol on any Township-owner property by any person, is contrary to the core values of the Township, and impedes efforts to build trust among all citizens in the policing services provided by the Township through its well-respected Police Department;"[21]

o "[T]he Board of Commissioners of Springfield Township … in an effort to be as clear and as reasonably limited as possible, specifically prohibits the following:

1) The publicly visible depiction of the symbol on the clothing or skin of any Township employee, agent or consultant while on duty, during the workday of the individual or while representing the Township in any way (specifically including the off duty time of any such individual if still wearing the Township uniform).

2) The publicly visible depiction of the Thin Blue Line American flag symbol on any personal property of a township employee, agent or consultant, which is brought into the township building (except prior to or subsequent to reporting for duty or any official assignment for the Township), and which, in the reasonable opinion of the Township Manager, is placed in a location likely to be seen by a member of the public while visiting the township building.

3) The display, by installation or affixation of a publicly visible depiction of the symbol, on township owned property (including township vehicles), by any person."[22]

• The Resolution does not prohibit any display of the Traditional Thin Blue Line Flag.[23]

---

[21] *Ibid.*
[22] *Ibid.*
[23] *Ibid.*

- "On January 16, 2023, defendant Taylor directed a memorandum to all township employees…"[24]

- As set forth in that memorandum:

  > Personal items that are brought into a township-owned building but are not publicly visible are permitted, as well as depictions of the symbol on personal clothing that may be worn by an employee while reporting to and from work, and

  > To the extent that any employee has any personal property with the symbol on it, and that property is located in such a place where it is likely to be seen by a member of the public, kindly remove it from the premises, or relocate it to a place where it is not likely to be seen by a member of the public while visiting a township building.[25]

- The memorandum does not provide any directive regarding any employee's conduct off-duty (except while in uniform) or on their own property.[26]

- "PA FOP fears that if it holds future events where the Thin Blue Line flag is displayed and depicted or installed or affixed to Township property by its members or members of the public, defendants will take punitive action against it to enforce the Resolution."[27]

- "Springfield PBA fears that if it holds future events where the Thin Blue Line flag is displayed and depicted or installed or affixed to Township property by its members or members of the public defendants would take punitive action against it to enforce the Resolution."[28]

---

[24] Exhibit "A", at ¶ 56.
[25] Exhibit 4 to Plaintiffs' Complaint.
[26] *Ibid.*
[27] Exhibit "A", at ¶ 57.
[28] Exhibit "A", at ¶ 58.

- "Officer Calhoun fears that if he continues to display or depict the Thin Blue Line flag on his many personal items, including while off duty, defendants would take punitive action against him to enforce the Resolution."[29]

- "Officer Baiada fears that if he continues to display or depict the Thin Blue Line flag on his many personal items, including while off duty, defendants would take punitive action against him to enforce the Resolution."[30]

- "Officer Wilbur fears that if he continues to display or depict the Thin Blue Line flag on his many personal items, including while off duty, defendants would take punitive action against him to enforce the Resolution."[31]

## III.   Legal Standard

### a.   *Legal Standard Under Rule 12(b)(1)*

Pursuant to FED. R. CIV. P. 12(b)(1), a complaint should be dismissed for lack of subject-matter jurisdiction.  A motion to dismiss based on a lack of standing is properly brought under Rule 12(b)(1), "because standing is a jurisdictional matter."  *Ballentine v. United States*, 486 F.3d 806, 810 (3rd Cir.2007).  As the Third Circuit explained:

> A district court has to first determine … whether a Rule 12(b)(1) motion presents a "facial" attack or a "factual" attack on the claim at issue, because that distinction determines how the pleading must be reviewed.
>
> * * *
>
> A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present. Such an attack

---

[29] Exhibit "A", at ¶ 59.
[30] Exhibit "A", at ¶ 60.
[31] Exhibit "A", at ¶ 61.

> can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint.
>
> * * *
>
> In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.  Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in favor of the nonmoving party.  This is in marked contrast to the standard of review applicable to a factual attack, in which a court may weigh and consider evidence outside the pleadings.

*Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357-358 (3rd Cir. 2010).  In this case, as there is no actual case or controversy regarding the claims alleged by the Springfield PBA and PA FOP, such claims should be dismissed for a lack of subject matter jurisdiction.

### b.      *Legal Standard Under Rule 12(b)(6)*

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Although this pleading standard does not require "detailed factual allegations, … it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 139 L.Ed.2d 868 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  A complaint that offers nothing more than "'labels and conclusions[,] ... a formulaic recitation of the elements of a cause of action ... [or] naked assertion[s]' devoid of 'further factual enhancement'" does not meet this standard and should be dismissed.  *Iqbal*, 129 S. Ct. at 1949, *citing Twombly*, 550 U.S. at 557.  Thus, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 556

(retiring the "no set of facts" test of *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

Under the *Twombly/Iqbal* paradigm, a Court must engage in a two-step inquiry to determine the sufficiency of the factual matter alleged. First, the Court must identify and disregard allegations that are nothing more than legal conclusions and, therefore, "not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Indeed, as both *Twombly* and *Iqbal* made clear, a Court need not consider allegations in the Complaint that constitute unsupported legal conclusions, legal conclusions couched as factual allegations, or conclusory factual allegations devoid of any reference to actual events. *See Twombly*, 550 U.S. at 556 (explaining that "on a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'"), *quoting Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986); *Bright v. Westmoreland County*, 380 F.3d 729, 735 (3rd Cir. 2004) ("In ruling on a Rule 12(b)(6) motion, courts can and should reject legal conclusions, unsupported conclusions, unwarranted references, unwarranted deductions, footless conclusions of law, and sweeping legal conclusions in the form of actual allegations."). Further, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

The Court then must identify the non-conclusory, well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 1950. If the factual allegations, assumed to be true, are consistent with a claim for relief, that claim must nevertheless be dismissed if the facts are equally consistent with a finding of no liability. *See Id*.

In addition, the Court need not "credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion School District*, 132 F.3d 902, 906

(3rd Cir. 1997).  In ruling on a 12(b)(6) motion, Courts consistently reject "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," and "legal conclusions cast in the form of actual allegations."  *Id*. at 906, n. 8.  The Court is not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations.  *Baraka v. McGreevy*, 481 F. 3d 187, 211 (3rd Cir. 2007).  Plaintiffs' Complaint fails to state a plausible cause of action for which relief may be granted.  As such, Defendants now move for dismissal of those claims pursuant to FED. R. CIV. P. 12(b)(6).

## IV.   <u>Legal Argument</u>

### a.   *The Springfield PBA and PA FOP Lack Standing to Challenge Section Three of the Resolution*

As set forth in Paragraphs 57 and 58 of Plaintiffs' Complaint, Springfield PBA and PA FOP challenge Section Three of the Resolution, which prohibits the installation or affixation or the Thin Blue Line American Flag on Township property.  However, as neither Springfield PBA nor PA FOP can plead the existence of any actual or impending injury relating to this provision, they lack standing to bring such a challenge.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 133 S. Ct. 1059, 1064, 185 L. Ed. 2d 72 (2013), *quoting Kokkonen* v. *Guardian Life Insurance Co. of America*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (*internal quotations omitted*).

> While it is emphatically the province and duty of the judicial department to say what the law is, Article III of the Constitution limits the federal judiciary's authority to exercise its judicial Power to "Cases" and "Controversies."   This case-or-controversy limitation, in turn, is crucial in ensuring that the Federal Judiciary respects the proper – and properly limited – role of the courts in a democratic society.   And courts enforce it through the several

> justiciability doctrines that cluster about Article III, including standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions

*Plains All American Pipeline L.P. v. Cook*, 866 F.3d 534, 538-39 (3rd Cir. 2017) (*internal citations and quotation marks omitted*).

> To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling. Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is *certainly* impending. Thus, we have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient.

*Clapper v. Amnesty International USA*, 568 U.S. 398, 410, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013) (*internal citations and quotation marks omitted, emphasis in original*). "The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *National Park Hospital Association v. Department of Interior*, 538 U.S. 803, 807, 123 S. Ct. 2026, 155 L. Ed. 2d 1017 (2003). "At its core, ripeness works to determine whether a party has brought an action prematurely and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." *Plains All American*, at 539 (*internal quotation marks omitted*). In order to establish standing, Plaintiffs must show an "injury in fact," *i.e.*, "an invasion of a legally protected interest which is … concrete and particularized." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 12 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).

Plaintiffs' claims in this case include a demand for declaratory judgment. Pursuant to 28 U.S.C. § 2201(a), "In a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations

of any interested party seeking such declaration, whether or not further relief is or could be sought."

"The Declaratory Judgment Act did not (and could not) alter the constitutional definition of 'case or controversy' or relax Article III's command that an actual case or controversy exist before federal courts may adjudicate a question." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 138, 127 S. Ct.  764, 166 L. Ed. 2d 604 (2007) (*Thomas, dissenting*), *citing Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 272-273, 61 S. Ct. 510, 85 L. Ed. 826 (1941).

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Casualty Co.*, at 273.

> Even when declaratory actions are ripe, the Act only gives a court the *power* to make a declaration regarding "the rights and other legal relations of any interested party seeking such declaration[;]" it does not *require* that the court exercise that power.  Second, declaratory judgments are issued before "accomplished" injury can be established, and this *ex ante* determination of rights exists in some tension with traditional notions of ripeness.  Nonetheless, because the Constitution prohibits federal courts from deciding issues in which there is no "case" or "controversy," declaratory judgments can be issued only when there is "an actual controversy[.]"  ***The discretionary power to determine the rights of parties before injury has actually happened cannot be exercised unless there is a legitimate dispute between the parties.***

*Step-Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 646-47 (3rd Cir. 1990) (*internal citations omitted*, *emphasis added*).  In *Step-Saver*, the Third Circuit identified the following criteria to examine whether to exercise discretion in a claim brought under the Declaratory

Judgment Act: "the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment."  *Id.* at 647.

As the Resolution does not include any penalty for violation and does not include any mechanism for enforcement of Section Three, Plaintiffs cannot show that they have suffered any actual injury sufficient to establish standing under Article III.  Pennsylvania's appellate courts have recognized the difference between an ordinance (which constitutes legislation) and a resolution (which does not).  *See e.g. Plum Borough School District v. Schlegel*, 855 A.2d 939, 942 n.6 (Pa. Cmwlth. Ct. 2004) (adopting the definition from *Black's Law Dictionary 1311 (6th ed. 1990)* – "'Resolution' denotes something less formal than 'ordinance'; generally, it is mere expression of opinion or mind of council concerning some matter of administration, within its official cognizance, and provides for disposition of particular item of administrative business of a municipality; it is not a law...."); *see also Seitel Data Ltd. v. Center Township*, 92 A.2d 851, 859-60 (Pa. Cmwlth. Ct. 2014) ("As a general rule, a resolution does not have the effect of a law or an ordinance.  It is usually viewed merely as a formal expression of the opinion or will of an official body or a public assembly, adopted by vote.")  (*internal quotation marks omitted*); *West Shore School District v. Pennsylvania Labor Relations Board*, 570 A.2d 1354, 1357 (Pa. Cmwlth. Ct. 1990) ("Because a resolution does not have the force and effect of law, our Supreme Court has consistently held that the General Assembly cannot use this legislative device as a substitution for a law."); 8 Pa. C.S. § 3301.1(c) (defining the scope of resolutions under the Borough Code).

The Township in this matter did not enact an ordinance.  The Resolution in this matter is not a law.  It is merely a statement of the opinion and expression of the Township Commissioners on the topic of the Thin Blue Line American Flag and sets forth a mechanism to prevent the display of the symbol being attributed to the Township itself.  In *Seitel Data*, the Pennsylvania

Commonwealth Court held that, since the plaintiffs challenged a resolution, and not a duly enacted ordinance, there was no subject matter jurisdiction.  The Court held specifically:

> If Greene Township's Amended Seismic Resolution does not qualify as a duly enacted ordinance, then Center Township and Shippingport Borough cannot enforce it, and Seitel has no basis to enjoin the Amended Seismic Resolution on the ground that it is an "ordinance" as that term is used in section 3306(1) of Act 13.
>
> Therefore, because there is no duly enacted "ordinance" regulating seismic activities present in these cases, this Court concludes that we lack subject matter jurisdiction over Seitel's claims. Accordingly, we grant the preliminary objections of Center Township and Shippingport Borough.

*Id.* at 862.  Just as in *Seitel Data*, the Resolution in this matter does not contain any mechanism for enforcement and does not contain any penalty for a violation.  There is no ordinance under which the Springfield PBA or the PA FOP could allege any actual or pending injury.   As such, neither the Springfield PBA nor the PA FOP have pled facts sufficient to establish Constitutional standing, and their challenge to Section Three of the Resolution should be dismissed for lack of subject matter jurisdiction.

  **b.** ***The Challenge to Section Two of the Resolution Must Fail as the Court Cannot Compel the Township to Engage in Speech in Violation of its Express Policy***

   Unlike the Springfield Township PBA and the PA FOP, Officers Wilbur, Baiada, and Calhoun (hereinafter collectively "the Plaintiff Officers") challenge Section Two of the Resolution, which restricts the display of the Thin Blue Line American Flag symbol on personal property where it would be likely to be seen by visitors to the Township building.  As noted above, this restriction was carefully tailored to restrict only the display of the symbol while on duty and only inside the Township building.  As set forth herein, this restriction was reasonably necessary to prevent compelled speech from being attributable to the Township in violation of its stated policy and its First Amendment rights.

Just as Township employees maintain a limited First Amendment right while speaking as private citizens, *see e.g. Garcetti v. Ceballos*, 547 U.S. 410, 418-19, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006), so does the Township itself have the right to speak on matters of public concerns and to prevent others from compelling it to engage in speech with which it disagrees.

> The First Amendment's Free Speech Clause does not prevent the government from declining to express a view.   When the government wishes to state an opinion, to speak for the community, to formulate policies, or to implement programs, it naturally chooses what to say and what not to say.   That must be true for government to work.   … The Constitution therefore relies first and foremost on the ballot box, not on rules against viewpoint discrimination, to check the government when it speaks.

*Shurtleff v. City of Boston*, 142 S.Ct. 1583, 1589, 212 L.Ed.2d 621 (2022) (*internal citations omitted*).   In *Shurtleff*, the Supreme Court addressed whether the City of Boston could decline to allow a citizen to fly a Christian-themed flag outside City Hall where it had allowed other groups to fly flags bearing other messages.   The Court noted that, "The flying of a flag other than the government's own can … convey a governmental message." *Id.*at 1591.   The Court looked at several criteria in addressing the issue – "the history of the expression at issue; the public's likely perception as to who (the government or a private person) is speaking; and the extent to which the government has actively shaped or controlled the issue." *Id.* at 1589-90.

Applying this test, the court in *Small Business in Transportation Coalition v. Bowser*, 2022 WL 2315544 (D. D.C. June 28, 2022), ruled that the District of Columbia could prohibit a private citizen from painting "Truckers Lives Matter" on a city street in response to a City-sponsored "Black Lives Matter" mural on a public roadway.   The court found that the City's mural was an exercise of public speech and held, "To the extent [the plaintiff] disagrees with the District's chosen message or wishes that the District would adopt and express its preferred message, it must utilize political channels, rather that the courts, to express its views." *Id.* at *5.

The protection of the Township's rights under the First Amendment include the right against compelled speech. "[F]reedom of speech includes both the right to speak freely and the right to refrain from speaking at all." *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, 138 S.Ct. 2448, 2463, 201 L.Ed.2d 924 (2018) (*internal citations omitted*). "Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command, and in most contexts, any such effort would be universally condemned." *Ibid.*

> Free speech serves many ends. It is essential to our democratic form of government, and it furthers the search for truth. Whenever the Federal Government or a State prevents individuals from saying what they think on important matters or compels them to voice ideas with which they disagree, it undermines these ends.
>
> When speech is compelled, however, additional damage is done. In that situation, individuals are coerced into betraying their convictions. Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning, and for this reason, one of our landmark free speech cases said that a law commanding "involuntary affirmation" of objected-to beliefs would require "even more immediate and urgent grounds" than a law demanding silence.

*Id.* at 2464. Here, the Township has announced its policy that it believes that the Thin Blue Line American Flag has been interpreted to "represent opposition to racial justice movements" and that it has "become a symbol of white supremacy." The Resolution prohibits the use of a non-public forum owned and controlled by the Township from being used to present a message that the Township finds objectionable. To require the Township to allow the public display of the flag on Township property would send the message that the Township approves of and condones a message which violates the stated policy of the Township. This would, in effect, serve to compel speech by the Township that it has declared to be contrary to its stated policy.

Applying the test set forth in *Shurtleff*, requires the dismissal of the Plaintiff Officers' challenge to Section Two of the Resolution. Here, federal courts have recognized that the Thin Blue Line American Flag has a history of a connotation with groups which oppose racial equality. *See Swantack v. New Albany Park Condominium Association Board of Directors*, 2022 WL 17600518, *1 n. 1 (S.D. Ohio December 13, 2022) ("The Thin Blue Line flag resembles the American flag but has a blue stripe – it has been a sign of support for law enforcement but has also come to signal opposition to the racial justice movement.") The Township has enacted a clear and unambiguous resolution that sets forth its opposition to this message, while still supporting its police officers and their right to display the Traditional Thin Blue Line Flag as a means of expressing solidarity.

Second, the Township's restriction is limited to those scenarios in which there is a strong likelihood that the public would perceive the display of the Thin Blue Line American Flag as expressive conduct attributable to the Township itself. The Plaintiff Officers are not limited in their ability to display the symbol on their personal belongings while arriving for or leaving work. They may still display the symbol on their personal vehicles and fly flags at their homes. The Township only has limited the display of the symbol in the publicly-visible areas of the Township building, where visitors are likely to see it, and are likely to attribute its display to support for the symbol and the negative associations that it has come to represent by the Township itself.

Third, through its Resolution, the Township has attempted to actively control its messaging on the issue of the Thin Blue Line American Flag. The Township has announced its support for the Police Department, while expressing concerns that the Thin Blue Line American Flag symbol "has also come to represent opposition to racial justice movements, including the Black Lives

Matter cause, and in some instances has become a symbol of white supremacy."[32]  The Township also has expressed that, "[T]he publicly visible display of the Thin Blue Line American Flag symbol … is contrary to the core values of the Township, and impedes efforts to build trust among all citizens on the policing services provided by the Township through its well-respected Police Department."[33]  There can be no dispute that preserving the trust of its Police Department in all communities of the Township is a reasonable and crucial position for the Township to espouse.  Any attempts by the Plaintiff Officers (acting as government officials) to compel the Township to convey a message contrary to its express beliefs on the topic through publicly displayed symbols within the Township building would violate the First Amendment rights of the Township and cannot be condoned or accepted by this Court.  The First Amendment, while guaranteeing Plaintiffs' rights to their own expressive conduct on their property cannot be used to abridge the same rights of the Township inside the Township building.  As such, the Plaintiff Officers' challenge to Section Two of the Resolution must be dismissed.

**V.**     **Conclusion**

As set forth herein, neither Springfield PBA nor the PA FOP can establish that they are likely to suffer any actual injury arising from the passage of Section Three of the Resolution.  As such, these entities lack constitutional standing and the Court has no subject-matter jurisdiction over this claim.  With the regard to the only challenge brought by the Plaintiff Officers, which is to Section Two of the Resolution, the relief requested would require the Court to violate the First Amendment interests of the Township to be free from compelled speech.  As such, this claim also must be dismissed with prejudice.

---

[32] Exhibit 3 to Plaintiffs' Complaint.
[33] *Ibid.*

Respectfully submitted,

**DEASEY, MAHONEY & VALENTINI, LTD.**

By:    /s/ *Rufus A. Jennings*

Harry G. Mahoney, Esquire
Pa. Attorney Identification No. 19609
Rufus A. Jennings, Esquire
Pa. Attorney Identification No. 93030
1601 Market Street, Suite 3400
Philadelphia, PA 19103
Phone:  (215) 587-9400
Fax:     (215) 587-9456
Email:  hmahoney@dmvlawfirm.com
           rjennings@dmvlawfirm.com


**WISLER PEARLSTINE, LLP**

By:    /s/ *James J. Garrity*

James J. Garrity, Esquire
Pa. Attorney Identification No. 26926
Brian R. Elias, Esquire
Pa. Attorney Identification No. 82938
Deborah R. Stambaugh, Esquire
Pa. Attorney Identification No. 325032
Email:  jgarrity@wispearl.com
           belias@wispearl.com
           dstambaugh@wispearl.com

Date: February 21, 2023