IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PENNSYLVANIA STATE LODGE FRATERNAL ORDER OF POLICE**, et al.,<br><br>Plaintiffs,<br><br>*v.*<br><br>**TOWNSHIP OF SPRINGFIELD**, et al.,<br><br>Defendants. | CIVIL ACTION<br><br>NO. 23-332-KSM |

MEMORANDUM

**Marston, J.**                                                                                                                               **May 25, 2023**

Plaintiffs Pennsylvania State Lodge Fraternal Order of Police, Springfield Township Police Benevolent Association, Officer Christian Wilbur, Officer Robert Baiada, and Corporal Christopher Calhoun[1] (collectively, "Plaintiffs") filed a Complaint against Defendants the Township of Springfield, seven members of the Township Board of Commissioners in their official capacity, and the Township manager in his official capacity. (Doc. No. 1.) Plaintiffs claim that Township Resolution No. 1592, "A Resolution Prohibiting the Display of the Thin Blue Line American Flag on All Township Property," is facially unconstitutional under the First and Fourteenth Amendments of the United States Constitution, and they seek permanent injunctive relief barring its enforcement. (*Id.*)

In this Memorandum, the Court considers a discovery dispute that arose during the deposition of Corporal Calhoun. For the reasons discussed below, the Court finds that Plaintiffs'

---

[1] Although the Complaint refers to Christopher Calhoun as an officer with the Springfield Township Police Department (*see* Doc. No. 1 at ¶ 5), during his deposition, he clarified that is currently a corporal in the Department (*see* Calhoun Depo. at 16:4–5). Accordingly, the Court refers to him as "Corporal Calhoun" in this Memorandum.

counsel erred when he directed Corporal Calhoun not to answer certain questions on the basis that the questions were harassing and sought improper opinion testimony and irrelevant information.

## I.

During Corporal Calhoun's deposition on May 18, 2023, Plaintiffs' counsel directed Corporal Calhoun not to answer questions about the appropriateness of a police officer placing a swastika on their uniform and about whether hanging a swastika in the police department "would violate [the] racial harassment training" that Corporal Calhoun received as an employee with the Department:

> Q:   Do you know of any member of the police who has asked to put a Swastika on their uniform?
>
> A:   No.
>
> Q:   Do you believe that would be appropriate?
>
> [Plaintiffs' counsel]: Objection to form. It's an improper opinion. I'll instruct the witness not to answer.
>
> [Defense counsel]: Based on what?
>
> [Plaintiffs' counsel]: I'm instructing him not to answer.
>
> [Defense counsel]: Based on what? Are you making a motion?
>
> [Plaintiffs' counsel]: Based upon it's an improper question, it's an improper opinion question of a fact witness.
>
> [Defense counsel]: I'm asking for his opinion.
>
> [Plaintiffs' counsel]: Okay. He's not going to answer the question.
>
> BY [DEFENSE COUNSEL]:
>
> Q.   Do you know if anyone in the police department has

>    attempted to hang a Swastika anywhere in the police department?
>
>    . . . .
>
>    [A]:    Not to my knowledge.
>
>    [Q]:    Do you believe that would violate your racial harassment training?
>
>    >    [Plaintiffs' counsel]:  Objection.  I'm not going to allow him to answer that question.  It's an improper opinion question.  If you want we can get Judge Marston on the phone we can just cut right to the chase.
>    >
>    >    [Defense counsel]:   Sure, let's do that.  And if Judge Marston is not available, I'm going to file a motion for sanctions against you.  This is an improper objection.
>
>    . . . .
>
>    BY [DEFENSE COUNSEL]:
>
>    Q:    And just for the record, Mr. Calhoun, will you be answering that question I just asked?
>
>    A:    No.

(Calhoun Depo. at 105:10–107:9.)

When the parties were unable to reach the undersigned, they finished the remainder of Corporal Calhoun's deposition and awaited a response from the Court.  On May 22, 2023, the Court discussed the issue at a telephone status conference with counsel.  During that conference, Plaintiffs' counsel argued that the swastika line of questioning sought irrelevant information because this case—which involves a facial challenge to a Township ordinance limiting the display of the Thin Blue Line American Flag—has nothing to do with swastikas or Corporal Calhoun's views on the limits of the Police Department's discrimination training.  Plaintiffs' counsel also argued that Federal Rule of Civil Procedure 30 allows an attorney to instruct the witness not to answer a question when the line of questioning becomes "harassing," which he

believes occurred in this case. In response to these arguments, defense counsel asserts that his questions did not rise to the level of harassment and that they sought relevant information, namely how far Corporal Calhoun believes he can "take his First Amendment rights." At the Court's request, the parties submitted a copy of the deposition transcript for the Court to review.

## II.

Federal Rule of Civil Procedure 30 governs depositions, outlining the procedure for noticing and taking a deposition, the scope of a deposition of a fact witness, and the proper way to state objections to questioning during a deposition. As to objections, Rule 30 states that an "objection at the time of the examination—whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record . . . in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). Once an objection is stated, "the examination still proceeds," with the testimony "taken subject to [the] objection." *Id.* Notably, counsel *may not* instruct a witness not to answer a question unless such an instruction is "necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." *Id.* Rule 30(d)(3) governs motions to terminate or limit a deposition, stating that "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3).

Plaintiffs' counsel's instruction to Corporal Calhoun was not given to "preserve a privilege" or "to enforce a limitation ordered by the court." Instead, counsel seems to argue that he interrupted the deposition because he believed it was "being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Initially,

the Court notes that at no point during the deposition did counsel state that he was moving under Rule 30(d)(3).[2] *See Armstrong v. Andover Subacute & Rehab Ctr. Servs. One, Inc.*, Civil Action No. 2:12-CV-3319 (SDW-SCM), 2020 WL 57947, at *2 (D.N.J. Jan. 6, 2020) ("Under Rule 30(c)(2), '[a] person may instruct a deponent not to answer *only* when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a *motion* under Rule 30(d)(3).' Contrary to Andover Defendants' reading of Rule 30(d)(3), the third path requires a motion." (emphasis in original)); *see also Van Stelton v. Van Stelton*, No. C11-4045-MWB, 2013 WL 5574566, at *15 (N.D. Iowa Oct. 9, 2013) ("An attorney may instruct a witness not to answer due to alleged bad faith or harassment only if he or she intends to present a motion for protective order. In other words, it is not enough for the attorney to instruct a witness not to answer and simply state, as grounds, that the question was posed in bad faith or for the purposes of harassment or annoyance. Instead, the attorney issuing the instruction has the burden of making an *immediate motion* for protective order." (emphasis added)); *NDK Crystal, Inc. v. Nipponkoa Ins. Co.*, No. 10 C 1824, 2011 WL 43093, at *4 (N.D. Ill. Jan. 4, 2011) ("NDK argues that it was correct in instructing [the witnesses] not to answer [opposing counsel's] deposition questions because NDK planned to file a motion pursuant to Rule 30(d)(3) . . . . The Court finds this argument unpersuasive. NDK overlooks the fact that it never made mention of a Rule 30(d)(3) motion at the depositions and gave no indication that its instructions to [the witnesses] to remain silent were based on such ground.").

Even if the Court considers the three bases given by counsel for interrupting the deposition—improper opinion testimony, irrelevance, and harassment—none of them satisfies

---

[2] To the contrary, when defense counsel asked Plaintiffs' counsel if he was "making a motion," Plaintiffs' counsel refused to answer, stating only, "it's an improper question, it's an improper opinion question of a fact witness." (Calhoun Depo. at 105:18–24.)

the standard for Rule 30(d)(3).

**A.**

The Court begins with Plaintiffs' counsel's assertion that the questions posed to Corporal Calhoun sought improper opinion testimony. Counsel did not explain this objection on the record or during the status conference with the Court.[3] Nevertheless, the Court notes that a deposition examination proceeds as it "would at trial under the Federal Rules of Evidence." Fed. R. Civ. P. 30(c)(1). Federal Rule of Evidence 701 states:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

The Court need not decide whether the two questions posed to Corporal Calhoun sought improper opinion testimony, because regardless, a violation of Rule 701 is *not*, on its own, a reason for directing a witness not to answer a question posed at a deposition. Notably, the purpose of Rule 701 is to ensure lay witnesses do not "usurp the jury's role as factfinders." *United States v. Jones*, 737 F. App'x 68, 73–74 (3d Cir. 2018) (quoting Rule 701 and explaining that lay witnesses may testify to the facts but may "not opine concerning what conclusions to draw from the facts such that the testimony 'usurps the jury's role as fact finder,' or offer an opinion which the witness is in no 'better position than the jurors to form'" (quoting

---

[3] To the contrary, counsel appears to have abandoned this argument, having failed to raise it during the telephone conference with the Court.

*United States v. Fulton*, 837 F.3d 281, 291–92 (3d Cir. 2016)). Clearly, a jury is not present at a deposition, and the concerns expressed in Rule 701 do not come into play. Accordingly, at a deposition, it is more appropriate for an attorney to note their objection under Rule 701 on the record, allow the witness to answer the question as posed, and seek exclusion of such testimony at trial through a motion *in limine*.

Corporal Calhoun's motion to limit the deposition is denied on this ground.

**B.**

Second, counsel objected to the swastika line of questions as seeking irrelevant information. But like improper opinion testimony, relevance is *not* a valid basis for directing a witness not to answer a question posed at a deposition. *See Hearst/ABC–Viacom Entm't Servs. v. Goodway Mktg., Inc.*, 145 F.R.D. 59, 63 (E.D. Pa. 1992) ("[T]he fact that a question is repetitive or irrelevant is not an appropriate ground for instructing a witness not to answer a question, since it does not involve a matter of privilege." (quotation marks omitted)); *Nordetek Envt'l, Inc. v. RDP Tech., Inc.*, Civil Action No. 09-4714, 2011 WL 13227709, at * (E.D. Pa. Nov. 28, 2011) ("Rule 30 makes plain, and the case law of this District confirms, that relevance is not ordinarily an adequate basis upon which a deponent may decline to answer a question."); *Armstrong*, 2020 WL 57947, at *2 ("A relevance objection is not itself proper grounds for instructing a witness not to answer questions in a deposition."); *see also Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("It is inappropriate to instruct a witness not to answer a question on the basis of relevance.").

Instead, relevancy objections should be preserved on the record and the witness allowed to answer. *See Hearst/ABC–Viacom Entm't Servs.*, 145 F.R.D. at 63 ("The proper procedure to follow when an objection is raised to a question propounded in a deposition is for the attorney

7

who raises the objection to note his objection but to allow the question to be answered." (quotation marks omitted)); *see also Van Stelton*, 2013 WL 5574566, at *4 ("Reasonable people can, and often do, disagree as to the relevance of specific information in the course of discovery. For the most part, even if counsel for a deponent is convinced that a question seeks irrelevant information, the correct course of action is to allow the witness to answer." (quotation marks omitted)).

 Corporal Calhoun's motion to limit the deposition is denied on this ground as well.

## C.

 Third, Plaintiffs' counsel argues that the deposition questions were harassing and abusive, thus warranting his instruction not to answer. The Court disagrees. *Two* questions—one about the appropriateness of displaying a swastika in the Police Department and the second about whether that display would violate the Department's race discrimination policy—do not amount to bad faith. The questions were not unduly repetitive, threatening, or seeking highly personal information that was meant to embarrass the witness. *See NDK Crystal, Inc.*, 2011 WL 43093, at *4 ("[N]othing in the deposition transcript supports a finding that [opposing] counsel met the level of abusive conduct required under [Rule 30(d)(3)(A)] . . . . [opposing] counsel did not threaten the witness, did not encourage him to disregard his counsel's instruction, or engage in any behavior that the Court finds to be abusive."); *cf. Van Stelton*, 2013 WL 5574566, at *4 ("Because the scope of discovery is broad, I could not state [before the deposition] that certain topics are *per se* improper. Questions about those topics could *become* improper over the course of a deposition if, for example, they proceeded *ad nauseam* or were posed in a hostile and offensive manner.").

 Plaintiffs' counsel seems to argue that the questions were, nevertheless, harassing

because they were irrelevant. But, as previously stated, the "standard for assessing motions pursuant to Rule 30(d)(3) is different than merely considering whether the questions are seeking relevant information." *Baines v. N.Y.C.*, 10 CV 9545 (JMF) (JLC), 2016 WL 3042787, at *5 (S.D.N.Y. May 27, 2016) ("Just because Baines does not like a question, does not think it is relevant or fair, or otherwise does not want to answer it does not mean that defense counsel is acting unreasonably or in bad faith. Baines is required to answer all deposition questions regardless of whether he believes them to be irrelevant; a successful 30(d)(3) motion will require a further and more detailed showing of inappropriate conduct."); *see also Van Stelton*, 2013 WL 5574566, at *17 ("As noted above, it is black-letter law that relevance is not an appropriate basis for an instruction not to answer (or for a refusal to answer). Couching the instruction or refusal in terms of 'harassment' does not change the analysis when the cry of 'harassment' is based solely on an argument that certain topics are not relevant.").[4]

In sum, the two deposition questions posed to Corporal Calhoun did not rise to the level of bad faith or harassment. The motion is denied on this ground as well.

\* \* \*

For the reasons discussed above, the Court denies Corporal Calhoun's motion under Rule

---

[4] This does not mean that relevance is not a factor in the Court's determination. Although the Court does not decide, at this juncture, whether defense counsel's questions sought relevant information, we note that the questions seem, at most, to be only tangentially related to the underlying dispute, which involves a *facial* challenge to a resolution limiting the display of the Thin Blue Line American Flag, not swastikas. Regardless of the relevance of the information sought, however, the Court emphasizes that here, there were only *two questions* asked of a *named Plaintiff. Contra. Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.p.A.*, No. CV 09-601(ADS) (AKT), 2009 WL 3757054, at *11 (E.D. N.Y. Nov. 9, 2009) ("As far as the Court is concerned, these questions come within the scope of Rule 30(d)((3)(A)'s prohibition because they do not address any claim or defense in the case, the witness is not a party, no evidence of any "conviction" has been presented to support a good faith basis for asking such questions, and the questions are not designed to lead to admissible evidence in light of the nature of the underlying incident involving a traffic accident. As such, this line of questioning borders on harassment of the witness."). Repeated questioning in this vein, even of a named party, could rise to the level of badgering the witness, but that was not the case here.

30(d)(3) to limit the scope of his deposition.

### III.

The Court also takes this opportunity to chastise the lack of professionalism demonstrated by both attorneys at times during Corporal Calhoun's deposition. As discussed throughout this Memorandum, Plaintiffs' counsel more than once improperly directed the witness not to answer questions posed to him. Defense counsel, in turn, became immediately combative when posed with an objection, accusing Plaintiffs' counsel (without justification) of coaching the witness. Finally, both sides were far too quick to threaten the other with "calling the Court" without further discussion. This behavior escalated a minor squabble to a full-blown disagreement that interrupted the deposition and the Court's schedule.

Although the Court encourages attorneys to immediately alert the undersigned of disagreements needing her intervention, that encouragement presumes that counsel will act *professionally* and attempt *in good faith* to resolve the dispute amongst themselves before asking the Court to intervene.