## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PENNSYLVANIA STATE LODGE FRATERNAL ORDER OF POLICE**, et al., | **CIVIL ACTION** |
| Plaintiffs, | **NO. 23-332-KSM** |
| *v.* | |
| **TOWNSHIP OF SPRINGFIELD**, et al., | |
| Defendants. | |

### MEMORANDUM

Marston, J.                                                           June 27, 2023

On January 27, 2023, Plaintiffs Pennsylvania State Lodge Fraternal Order of Police ("PA FOP"), Springfield Township Police Benevolent Association ("PBA"), Corporal Christopher Calhoun,[1] Officer Robert Baiada, and Officer Christian Wilbur filed this lawsuit against Defendants the Township of Springfield, seven members of the Township Board of Commissioners in their official capacity, and the Township manager in his official capacity (collectively, the "Township").  (Doc. No. 1.)  Plaintiffs argue that Township Resolution No. 1592, "A Resolution Prohibiting the Display of the Thin Blue Line American Flag on All Township Property," is facially unconstitutional under the First and Fourteenth Amendments of the United States Constitution, and they seek injunctive relief barring its enforcement.  (*Id*.)  The Township moves for partial dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that the PA FOP and the PBA (collectively, the "Organizations") lack standing

---

[1] Although the Complaint refers to Christopher Calhoun as an officer with the Springfield Township Police Department (*see* Doc. No. 1 at ¶ 5), during his deposition, he clarified that is currently a corporal in the Department (*see* Calhoun Depo. at 16:4–5).  Accordingly, the Court refers to him as "Corporal Calhoun" in this Memorandum.

to challenge part of the Resolution.[2]  (Doc. No. 22.)  The Organizations oppose that motion.

(Doc. No. 23.)  For the reasons discussed below, the motion is denied.

## I.    FACTUAL BACKGROUND

Viewing the allegations in the Complaint as true, the relevant facts are as follows.

### A.    The Thin Blue Line American Flag

This controversy centers around what the Court will refer to as the "Thin Blue Line

American Flag," an American flag that is in black and white except for a single blue horizontal

stripe:



For Plaintiffs, the flag "has come to represent a show of support for and solidarity with

members of law enforcement."  (Doc. No. 1 at ¶ 18; *see also id.* at ¶¶ 20, 22 (stating that the

Organizations view the flag as representative of "the preservation of the rule of law, the

protection of peace and freedom, the sacrifice of fallen law enforcement officers, and the

dedication of law enforcement officers").)  At a national level, the FOP has passed a resolution

that affirms its "support for the use of the Thin Blue Line [American] flag by law enforcement,"

and at a local level, individual members of the PA FOP have been known to wear pins, buttons,

and clothing depicting the flag, and to put bumper stickers of the flag on their cars.  (*Id.* at ¶¶ 19,

21; *see also id.* at ¶ 26 (alleging that individual members of the PBA similarly display the flag on

---

[2] The Township does not challenge the standing of the individual Plaintiffs.

clothing and bumper stickers and "[m]any members . . . wear a rubber replacement wedding ring that displays and depicts the Thin Blue Line [American] flag").)  Likewise, the PBA, which represents members of the Springfield Township Police Department in "legal, legislative, and labor related matters" (*id.* at ¶ 2), has incorporated the Thin Blue Line American Flag into its logo:



This logo appears on the PBA's website, its merchandise, and at fundraisers and events hosted by the PBA, some of which take place on Township property.  (*Id.* at ¶¶ 24–25, 27–28.) Members of the PBA have "displayed, depicted, affixed, or installed" the logo on Township property during those events.  (*Id.* at ¶¶ 27–28.)  Finally, the three individual Plaintiffs— Corporal Calhoun, Officer Baiada, and Officer Wilbur—are employed with the Township Police Department and are members of the PA FOP and the PBA.  (*Id.* at ¶¶ 3–5.)  Each individual plaintiff "depicts and displays the Thin Blue Line [American] flag on his personal property" while on and off duty and wishes to continue doing so.  (*Id.* at ¶¶ 30–44.)

While Plaintiffs revere the Thin Blue Line American Flag, many members of the public, including residents of Springfield Township, view it as a symbol of police brutality and racial animosity.  (*See* Doc. No. 1-3.)  On October 26, 2022, Township Solicitor James Garrity, and Township Manager A. Michael Taylor, sent a cease-and-desist letter to the PBA about its use of the flag.  (Doc. No. 1 at ¶ 45; *see also* Doc. No. 1-3.)  In that letter, Garrity and Taylor explained that many Township residents have "express[ed] deep discontent and distrust of the PBA and

even the Township's own police department, due to PBA's use of the flag which has become

known as the 'Blue Lives Matter Flag.'" (Doc. No. 1-3 at 1.) They emphasize that the flag "has

been at the center of the controversy between minority communities and law enforcement

officials across the country," citing the "usurpation and display" of the flag by white nationalists.

(Doc. No. 1-3 at 1.) Thus, they reason, "regardless of the history or original intent of the PBA in

displaying" the flag, "[t]o many members of the Springfield Township community, the

utilization of the 'Blue Lives Matter' Flag unnecessarily exacerbates the ongoing conflict

between police officers and the communities they serve." (*Id.* at 2–3.) The letter ends by

directing the PBA and its members to discontinue all depictions of the flag or have the PBA

remove the words "Springfield Township" from its name. (*Id.* at 2.)

**B.     Resolution 1592**

When the PBA refused to change its logo or its name, the Springfield Township Board of

Commissioners drafted Resolution 1592:

> [T]he Board of Commissioners of Springfield Township does, as a matter of respect and sensitivity to all the citizens of the Township, hereby prohibit the publicly visible display or use of any image which depicts the Thin Blue Line American Flag symbol by any Township employee, agent, or consultant and in an effort to be clear and as reasonably limited as possible, specifically prohibits the following:
>
> > 1)   The publicly visible depiction of the symbol on the clothing or skin of any Township employee, agent or consultant while on duty, during the workday of the individual or while representing the Township in any way (specifically including the off duty time of any such individual if still wearing the Township uniform). ["Section One"]
> >
> > 2)   The publicly visible depiction of the Thin Blue Line American [F]lag symbol on any personal property of a [T]ownship employee, agent, or consultant, which is brought into the [T]ownship building (except prior to or subsequent to reporting for duty or any official assignment for the

> Township), and which, in the reasonable opinion of the Township Manager, is placed in a location likely to be seen by a member of the public while visiting the [T]ownship building. ["Section Two"]
>
> 3) The display, by installation or affixation of a publicly visible depiction of the symbol, on [T]ownship owned property (including [T]ownship vehicles), by any person. ["Section Three"]

(Doc. No. 1-5 at 1–2.)

The Resolution was placed on the agenda of the December 14, 2022 meeting of the Board of Commissioners, and ultimately adopted on January 11, 2023. (Doc. Nos. 1-4, 1-5; *see also* https://www.springfieldmontco.org/government/board-of-commissioners/commissioner-agendas-minutes/ ("Video of Jan. 11 Bd. Meeting").) Five days later, Mr. Taylor circulated a memorandum to all Township employees, including the individual Plaintiffs, about Resolution 1592, emphasizing that it was "effective immediately." (Doc. No. 1-6.)

### C.    Procedural History

On January 27, 2023, a little over two weeks after the Board adopted Resolution 1592, the Organizations and individual Plaintiffs filed this action, along with a motion seeking a TRO and preliminary injunction. (*See* Doc. Nos. 1, 2.) That afternoon, the Court held a telephone conference with counsel for Plaintiffs and Township Solicitor Garrity. (*See* Doc. No. 4.) During that conference, Mr. Garrity represented that the Township would not enforce the Resolution pending the Court's ruling on the motion for preliminary injunction. Because this representation eliminated the risk of imminent injury to Plaintiffs, the Court denied Plaintiffs' request for a TRO as moot. (Doc. No. 5.) The Court simultaneously scheduled an evidentiary hearing and oral argument on the request for preliminary injunction. (*Id.*)

Before that argument occurred, however, the parties stipulated that the Township would continue to refrain from enforcing Resolution 1592 until further order from the Court. (Doc. No.

8.)  Accordingly, the Court also denied the motion for preliminary injunction as moot and entered a scheduling order, which included dates for dispositive motions and oral argument on the constitutionality of Resolution 1592 and the appropriateness of a permanent injunction.  Not long after beginning discovery, the Township moved to dismiss the Organizations under Rule 12(b)(1) for lack of standing.  (Doc. No. 22.)[3]

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) "governs jurisdictional challenges to a complaint."  *Williams v. Litton Loan Servicing*, Civil Action No. 16-5301 (ES) (JAD), 2018 WL 6600097, at *5 (D.N.J. Dec. 17, 2018).  "The Court can adjudicate a dispute only if it has subject-matter jurisdiction to hear the asserted claims."  *Id.* (quotation marks omitted).  Because standing is a jurisdictional matter, it is properly challenged by motion under Rule 12(b)(1).[4]  "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction."  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  A facial attack "contests the sufficiency of the complaint because of a defect on its face," and the Court considers only the "allegations in the complaint, along with documents referenced therein, in the light most favorable to the nonmoving party."  *Williams*, 2018 WL 6600097, at *5

---

[3] The Township simultaneously moved under Rule 12(b)(6) to dismiss the individual Plaintiffs' challenge to Section Two of the Resolution, arguing that any challenge to that Section fails as a matter of law.  (Doc. No. 22 at 22–26.)  The Court denies the motion at this stage because *the Township* previously asked the Court to reserve argument on the constitutionality of the Resolution until summary judgment. (*See* Doc. No. 21 (scheduling order entered after a pretrial conference in which the Township asked the Court to delay ruling on the appropriateness of an injunction until after the Township had an opportunity to conduct discovery).)

[4] Plaintiffs argue that the Court should find the PBA has standing because "[t]wice previously counsel for defendants admitted that Springfield PBA had standing" and "[t]hose statements should be binding on defendants."  (Doc. No. 23 at 15.)  Because standing is a jurisdictional issue, it is immaterial whether Defendants concedes it; the Court must confirm for itself that Plaintiffs have standing to pursue their claims.  *See Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 319 n.5 (3d Cir. 2011) ("[W]e recognize that parties are not permitted to waive constitutional standing."); *United States v. Butler*, 405 F. App'x 652, 654 (3d Cir. 2010) ("Article III standing . . . cannot be waived . . . .").

(quotation marks omitted).

Here, although the Township does not describe its attack as facial or factual, we construe its argument as a facial attack because it does not look beyond the Complaint and its attachments, and the Township presents a legal dispute as opposed to a factual one. (*See* Doc. No. 22 at 18 (framing the issue as the Organizations failure to "*plead* the existence of an actual or impending injury" (emphasis added)).) *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) ("A factual attack requires a factual dispute, and there is none here."). "Thus, we consider whether Plaintiffs' allegations, attached documents, and referenced proceedings establish the necessary jurisdiction . . . ." *Myers v. Caliber Home Loans, Seterus, Inc.*, No. 1:19-cv-596, 2019 WL 4393377, at *3 (M.D. Pa. Sept. 13, 2019); *see also Gould Elecs. Inc.*, 220 F.3d at 176 (explaining that in a facial challenge, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff"). Accordingly, at this stage, the Court asks only whether the Organizations have alleged facts which support a finding of Article III standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." (cleaned up)).

## III.   DISCUSSION

The Township does not dispute the standing of the individual Plaintiffs, all of whom are members of the PBA and PA FOP. (*See* Doc. No. 1 at ¶¶ 3–5.) Instead, it argues that the Organizations lack standing to challenge Section Three of the Resolution, which prohibits "[t]he display, by installation or affixation of a publicly visible depiction of the symbol, on [T]ownship owned property (including [T]ownship vehicles), by any person." (*See* Doc. No. 22 at 18.) The

Organizations respond that they have never limited their challenge to a specific section of the Resolution and argue that they have standing to challenge all aspects of the Resolution, including Section Three, under any of four standing doctrines: (1) direct standing, (2) associational standing, (3) the one plaintiff rule, and (4) overbreadth standing. (Doc. No. 23 at 2.)[5]  Because the Court finds that the PBA has associational standing to challenge Section Three, we need not address the parties' remaining arguments.

An organization has associational standing when: "[1] its members would otherwise have standing to sue in their own right; [2] the interests it seeks to protect are germane to the organization's purpose; and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Com'n*, 432 U.S. 333, 343 (1977).

---

[5] The Resolution's prohibition section states:  "[T]he Board of Commissioners of Springfield Township does . . . hereby prohibit the publicly visible display or use of any image which depicts the Thin Blue Line American Flag symbol by any Township employee, agent, or consultant and in an effort to be clear and as reasonably limited as possible, specifically prohibits the" categories of conduct outlined in the three paragraphs that follow. (Doc. No. 1-5 at 1–2.)  Although neither party directly addresses how the Court should construe the Resolution, the Township appears to read this sentence as introducing three distinct prohibitions, which are outlined in the paragraphs that follow it, and limiting the scope of those paragraphs such that they apply only to "Township employee[s], agent[s], or consultant[s]." (*See generally* Doc. No. 22.)  The Township also assumes that the individual Plaintiffs challenge only Sections One and Two of the Resolution, while the Organizations challenge only Section Three—an assumption at odds with the text of the Complaint, which shows all Plaintiffs challenge Resolution 1592 in its entirety. (*See id.* at 18, 22.)  The Organizations, by contrast, seem to view this paragraph as imposing a sweeping prohibition on the "publicly visible display or use of any image which depicts the Thin Blue Line American Flag symbol by any Township employee, agent, or consultant." (Doc. No. 1-5 at 1–2; *see also* Doc. No. 23 at 1.)  They view the three paragraphs that follow as "clarifying" the scope of this broad prohibition and then, in the third paragraph, extending it to cover "any person" who attempts to "affix[ ]" the flag on Township property. (Doc. No. 23 at 1.)

Because we find the PBA has associational standing even under the Township's reading of the Resolution and the Complaint, and because the parties provide limited argument on the issue of statutory interpretation, the Court cannot rule one way or the other at this stage.  The parties should clarify and discuss their respective positions in their dispositive motions with citations to case law.

A.      **Member Standing**

First, a plaintiff must allege that its individual members meet the "irreducible constitutional minimum of standing."  *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 152 (3d Cir. 1999) (quoting *Lujan*, 504 U.S. 560).  This requirement has three parts:  (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) "a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (quoting *Lujan*, 504 U.S. at 560).

1.      **Injury in Fact**

For the injury in fact requirement, the Court considers whether the PBA's members have suffered an injury that is both "concrete and particularized" and "actual or imminent."  *Susan B. Anthony List*, 573 U.S. at 157–58 (quoting *Lujan*, 504 U.S. at 560).  An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'"  *Id.* (quoting *Clapper v. Amnesty Intern. USA*, 568 U.S. 398 (2013)).  In other words, a plaintiff who challenges a statute on the basis that it will cause them harm in the future "must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

In *Susan B Anthony List v. Driehaus*, the Supreme Court clarified the scope of the injury in fact requirement in the context of a preenforcement challenge to a statute limiting speech.  The Court explained that "the threatened enforcement of a law" itself can rise to the level of an Article III injury, and the individual "subject to such a threat" need not suffer "an actual arrest, prosecution, or other enforcement action" as a "prerequisite to challenging the law."  *Susan B. Anthony List*, 573 U.S. at 158; *see also Babbitt*, 442 U.S. at 298 ("[O]ne does not have to await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly

impending, that is enough." (quotation marks omitted)).  Instead, an individual "satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statue, and there exists a credible threat of prosecution thereunder.'"  *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbitt*, 442 U.S. at 298).  The PBA argues that its members satisfy each requirement.  The Court agrees.

First, the PBA alleges that its members have displayed the Thin Blue Line American Flag—which is incorporated into the PBA's logo—on Township property at past PBA events and would like to do so again in the future.  Notably, the PBA, through its members, has "hosted events on property owned by Springfield Township where the [flag] is displayed, depicted, affixed, or installed by [the PBA's] members," and it "wishes to host" similar events in the future.  (Doc. No. 1 at ¶¶ 24–28.)[6]  Displaying the PBA logo and/or the Thin Blue Line American Flag is a "course of conduct arguably affected with a constitutional interest," i.e., the right to free speech under the First Amendment.

Second, this conduct is "arguably proscribed" by Section Three, which prohibits "[t]he display, by installation or affixation of a publicly visible depiction of the symbol, on [T]ownship owned property (including [T]ownship vehicles), by any person."  (*See* Doc. No. 22 at 18.)  The phrase, "any person," clearly includes the members of the PBA.  Even if the Court ultimately adopts the Township's interpretation of Section Three and finds that "any person" is limited to those persons who are "employees, agents, and consultants" of the Township, the phrase would

---

[6] The Township argues that the Organizations cannot satisfy the injury in fact requirement because "the claimed injuries asserted by the individual members of the [Organizations] are limited to the limitations imposed by Section Two of the Resolution."  (Doc. No. 24 at 2.)  This misreads the allegations in the Complaint, which alleges injuries incurred by all members of the PBA, in addition to the specific injuries incurred by the individual Plaintiffs.  (*See* Doc. No. 1 at ¶¶ 24–28.)

still encompass the PBA's members because all of the PBA's members are employed with the Township Police Department.  In addition, the term "affix," as used in Section Three, means to "fix, fasten, or attach (a thing) physically to something, as with a nail, string, glue, etc.; to stick or fix in place."  Affix, v., *Oxford English Dictionary*, at 1.b. https://www.oed.com/view/Entry/3435?rskey=M8OFhx&result=2&isAdvanced=false#eid (last visited June 12, 2023).  This definition is not limited to permanent attachments and would seem to include temporary installations, such as the hanging of posters in a public park or the installation of a sign on a fence at the little league baseball field.  The PBA members' future display of the flag at PBA events and fundraisers on Township property arguably falls within that broad scope.

Finally, the Court finds that there is a "credible threat" of enforcement under the entire Resolution, including Section Three, as to Township employees like the PBA's members.  The Township argues that because the "Resolution does not include any penalty for violation and does not include a mechanism for enforcement of Section Three, Plaintiffs cannot show that they have suffered an actual injury sufficient to establish standing under Article III."  (Doc. No. 22 at 21.)  Citing the "difference between an ordinance (which constitutes legislation) and a resolution (which does not)," the Township reasons that Section Three of the Resolution is nothing more than "a statement of opinion and expression of the Township Commissioners on the topic of the Thin Blue Line American Flag."  (*Id.*)  But the distinction between a resolution and ordinance is largely immaterial here, because the Township maintains that the Resolution *is enforceable* as against Township employees (*see* Apr. 3, 2023 Oral Arg. Tr. at 49:11–14), and as stated above, each member of the PBA is a member of the Township Police Department.  In other words, the Township's attempt to limit Section Three does nothing to dispel the threat of the Resolution's enforcement as against the PBA's members.

That threat is particularly high given the Township's prior communications to the PBA and Township employees, including a cease-and-desist letter demanding that "the PBA *and its members* cease any use of the" Thin Blue Line American Flag (Doc. No. 1-3 at 2 (emphasis added)), and a memorandum to all Township employees, telling them that Resolution 1592 "is effective immediately" and that it "specifically prohibits . . . [t]he display, by installation or affixation, of a publicly visible depiction of the symbol on township-owned property by any person" (Doc. No. 1-6 at 1). *See Babbitt*, 442 U.S. at 302 ("The consumer publicity provision on its face proscribes dishonest, untruthful, and deceptive publicity, and the criminal penalty provision applies in terms to 'any person who violates any provision' of the Act. Moreover, the State has not disavowed any intention of invoking the criminal penalty provision against unions that commit unfair labor practices. Appellees are thus not without some reason in fearing prosecution for violation of the ban on specified forms of consumer publicity." (cleaned up)); *cf. Speech First Inc. v. Fenves*, 979 F.3d 319, 334–35 (5th Cir. 2020) (explaining that when the court is faced with a facial "pre-enforcement challenge[ ] to [a] recently enacted (or, at least, non-moribund) statute[ ] that facially restrict[s] expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence" (quotation marks omitted)).

This credible threat of prosecution, in turn, is likely to result in self-censorship by the PBA's members, i.e., they will refrain from invoking their First Amendment rights for fear of disciplinary action. *See Virginia v. v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) ("[T]he alleged danger of this statute is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution."); *Aiello v. City of Wilmington*, 623 F.2d 845, 857 (3d Cir. 1980) ("An impermissible chill is created when one is deterred from engaging in

protected activity by the existence of a governmental regulation or the threat of prosecution thereunder.").

The Court finds that the PBA has sufficiently alleged that Section Three of Resolution 1592 raises a credible, imminent threat of injury to its members.

### 2. <u>Causation and Redressability</u>

The Township does not dispute that individual members satisfy the remaining two prongs of the standing analysis—causation and redressability—and the Court finds both prongs easily satisfied here. The Township's decision to pass Resolution 1592 and the potential enforcement of that Resolution, including Section Three, against Township employees is the cause of the PBA members' harm and potential self-censorship. *Speech First Inc*., 979 F.3d at 334–35. That injury could be redressed by the Court enjoining enforcement of the Resolution. *Id.*

\*     \*     \*

Accordingly, the Court finds that the PBA's members would have standing to challenge Section Three.

### B. Germane to the PBA's Purpose

The Court also finds that the PBA seeks to protect interests germane to its purposes. The PBA exists in part to represent its members' legal interests. (Doc. No. 1 at ¶ 2.) The present litigation, to protect members' First Amendment rights, is clearly in furtherance of that purpose. *See Nat'l Assoc. for the Advancement of Multijurisdictional Practice v. Castille*, 66 F. Supp. 3d 633, 642 (E.D. Pa. 2014) ("[The organization] exists for the purpose of filing these claims (or more broadly, for the purpose of promoting lawyers' rights to practice in multiple jurisdictions), so the claims [challenging reciprocal bar admissions rules] are certainly germane to the organization's purpose."). Moreover, the PBA explicitly adopted the Thin Blue Line American Flag into its logo (Doc. No. 1 at ¶ 24), believing that the flag represents, among other things, "the

sacrifice of fallen law enforcement officers and the dedication of law enforcement officers"
(*id.* at ¶ 22) and that it is "a symbol of support for its officers and as a symbol of pride in law
enforcement" (*id.* at ¶ 23).  These facts further suggest that this lawsuit, which seeks to protect
the members rights to display the flag, represent interests germane to the PBA's purpose of
supporting the law enforcement officers that work for the Township Police Department and are
members of the PBA.

C.      **Member Participation**

Finally, neither the claim nor the relief sought in this action requires participation of
individual members in the lawsuit.  The PBA brings a facial challenge to Section Three; this
challenge raises a legal question, not a factual one.  *Contra Free Speech Coalition v. Atty. Gen.*,
974 F.3d 408, 422 (3d Cir. 2020) (finding that as-applied First Amendment claims required "an
individualized inquiry for each association member").  To the extent any facts are relevant to
deciding the legality of Section Three, they relate to the Township's decision to invoke
Resolution 1592, not the effect that the statute had when it was applied to a given member of the
PBA.  *See U.S. v. Stevens*, 559, U.S. 460, 463 (2010).  As for the relief sought, here the PBA
asks for declaratory and injunctive relief.  (Doc. No. 1 at 16.)  Such requests do not require
participation by individual association members.  *Hosp. Council v. City of Pittsburgh*, 949 F.2d
83, 89 (3d Cir. 1991) ("The Supreme Court has repeatedly held that requests by an association
for declaratory and injunctive relief do not require participation by individual association
members.").

IV.    **CONCLUSION**

The PBA has associational standing to challenge Section Three of the Resolution.
Because the PBA has standing to challenge Section Three, the Court need not determine whether
the PA FOP also has standing to challenge that Section.  *See Bd. of Educ. v. Earls*, 536 U.S. 822,

826 n.1 (2002) ("Because we are likewise satisfied that Earls has standing, we need not address whether James also has standing."); *Seigel v. Platkin*, Civil No. 22-7464 (RMB/AMD), 2023 WL 1103676, at *6 (D.N.J. Jan. 30, 2023) ("[O]nce one plaintiff is found to have standing as to a claim, the Court need not inquire as to the standing of other plaintiffs on that claim for purposes of the Motion." (citations omitted)).

The Township's motion to dismiss is denied. An appropriate order follows.