IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRATERNAL ORDER OF POLICE PENNSYLVANIA LODGE, ET. AL., | : : : | No.  23-332-KSM |
| Plaintiffs | : : | |
| v. | : : | |
| TOWNSHIP OF SPRINGFIELD, ET. AL. | : : : | |
| Defendants | : : | |

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

This case concerns the Thin Blue Line American Flag and the Township of Springfield's attempt to ban it through Resolution 1592 (the "Resolution"). The Resolution is facially unconstitutional. The Court should declare it so and permanently enjoin its enforcement.

The Resolution is titled "A RESOLUTION **PROHIBITING** THE DISPLAY OR USE OF THE THIN BLUE LINE AMERICAN FLAG ON **ALL** TOWNSHIP PROPERTY."  The Resolution bans the "publicly visible display or use" of the Thin Blue Line American Flag symbol "or any image which depicts the Thin Blue Line American Flag symbol by any Township employee, agent, or consultant." It bans Township employees from display or depicting the Thin Blue Line American Flag on clothing during the workday **or** when "representing the Township **in any way**." It bans employees from displaying or depicting the Thin Blue Line American Flag within the Township building in areas where "in the reasonable opinion of the Township manager [are]

likely to be seen by a member of the public while visiting the township (sic) building." And it bans **any person** from displaying "by installation or affixation a publicly visible depiction of the symbol, on township owned property."

The reason the Township has banned the Thin Blue Line American Flag is no secret. It is banned because of the viewpoint. The Resolution states the Thin Blue Line American Flag has "come to represent opposition to racial justice movements, including the Black Lives Matter cause," "appears to express support for the systemic oppression of certain members of the Township community," and is otherwise "offensive." This is viewpoint discrimination on its face.  That viewpoint discrimination is the poisoned dagger to any notion that the Resolution is constitutional. *Matal v. Tam*, 582 U.S. 218, 248 (2017) ("A law found to discriminate based on viewpoint is an egregious form of content discrimination, which is presumptively unconstitutional.")

The Resolution's viewpoint bias is fatal to it regardless of whether the Resolution is interpreted to impose prohibitions on the public at large or is limited to regulating only the speech of Township employees, agents, or consultants. There is plainly no constitutional means by which the Township can broadly prohibit the display or depiction of the Thin Blue Line American Flag by "any person" on "all Township property." But the Resolution's viewpoint bias is equally toxic to its application to Township employees, agents, and consultants. *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 108 (3d Cir. 2022) ("[that] viewpoint-based government regulations on speech are nearly always presumptively suspect. . . is no less true" in the context of government employment.)

Still, even absent its facial viewpoint bias, the Resolution fails the test for prior restraint regulations of employee speech articulated in *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454 (1995). The Township admits it has not suffered any real and actual disruption in Township services because of the display or depiction of Thin Blue Line American Flag by any Township employee, agent, or consultant. Indeed, it can point to no real harm whatsoever. And, even if it could, it cannot show the Resolution's prohibitions are narrowly tailored to ameliorate any perceived disruptions.

The Resolution is also facially unconstitutional because it is both vague and overly broad. The Resolution is vague because it is unclear whether it regulates the conduct of the public or only the conduct of Township employees, agents, or consultants. It is vague regarding whether it applies on "all Township property" or only within the Township building. The Resolution is equally vague because it vests enforcement, in part, to the subjective whims of a single government employee, the Township Manager, who holds the power to determine whether the Thin Blue Line American Flag is displayed in "a location likely to be seen by a member of the public while visiting the township building." The Resolution is also overly broad because it can sweep in clearly protected speech by banning the "display or use of the Thin Blue Line American Flag on **all** Township property" **by any person**.

The Resolution is as audacious as it is unconstitutional. Accordingly, the Court should not hesitate to declare the Resolution unconstitutional, permanently enjoin

its implementation and enforcement, and award plaintiffs attorneys fees and costs incurred.

FACTUAL BACKGROUND

I.   THE THIN BLUE LINE AMERICAN FLAG AND THE SPRINGFIELD PBA LOGO.

The "Thin Blue Line American Flag" is a black and white American flag. The horizontal stripes are black and white with the exception of one horizontal stripe that is blue. An image of the Thin Blue Line flag is depicted below.



Compl., ECF No. 1, ¶ 17; Ans., ECF No. 42, ¶ 17. The Springfield Township Police Benevolent Association ("Springfield PBA") has incorporated the Thin Blue Line American Flag into its logo ("Springfield PBA Logo"). Compl., ECF No. 1, ¶ 24; Ans., ECF No. 42, ¶ 24. The Springfield PBA Logo is shown below.



*Id.* ("Springfield PBA Logo")

The Springfield PBA began using this logo in March 2020. Springfield PBA Ans. to Def.'s Int. No. 1 at Ex. "5.". Springfield PBA displays the Springfield PBA Logo on its website, https://stpbamontco.org/, at fundraisers, at events supporting Springfield PBA, and on merchandise. Compl., ECF No. 1, ¶ 25; Ans., ECF No. 42, ¶ 25.

## II.  The Township's efforts to regulate the Thin Blue Line American Flag and Springfield PBA Logo.

On October 26, 2022, Township solicitor, James J. Garrity, and Township Manager, A. Michael Taylor ("Taylor"), sent a letter to the Springfield PBA demanding that it "cease any use of the [Thin Blue Line American Flag]."[1] as a symbol. ECF No. 1-3. The letter states that if the Springfield PBA does not "remove all display and depiction of this Flag from its entity materials within twenty (20) days of the date of this letter, the Township must demand that the words "Springfield Township" be immediately removed from the name of the PBA and the PBA cease and eliminate any reference to Springfield Township from any and all of its internal and publicly distributed materials." *Id.* The Springfield PBA did not cease its display or depiction of the Thin Blue Line American Flag.

Therefore, at the December 14, 2022 meeting of Springfield Township Board of Commissioners, the Township placed on the agenda resolution number 1587 authorizing the Township Solicitor to file a complaint to compel Springfield Township

---

[1] The letter refers to the Thin Blue Line American Flag as the "Blue Lives Matter" Flag.

PBA to remove the words "Springfield Township" from their logo. ECF No. 1-4. The Board of Commissioners ultimately did not vote on Resolution 1587. Instead, on January 11, 2023, the Board of Commissioners considered Resolution 1592, which is at issue in this litigation.

### III.   RESOLUTION 1592.

At its January 11, 2023, meeting of the Board of Commissioners, the Township of Springfield (the "Township") passed the Resolution. The Resolution states:

### RESOLUTION NO. 1592

### A RESOLUTION PROHIBITING THE DISPLAY OR USE OF THE THIN BLUE LINE AMERICAN FLAG ON ALL TOWNSHIP PROPERTY

### SPRINGFIELD TOWNSHIP, MONTGOMERY COUNTY

**WHEREAS**, the "Thin Blue Line" phrase refers to the line between chaos and order, with law enforcement officers as the barrier preventing any further encroachment of chaos upon order; and

**WHEREAS**, the traditional "Thin Blue Line" flag was depicted as a black field with a single, narrow blue line (hereinafter referred to as the "Traditional Thin Blue Line Flag"); and

**WHEREAS**, a variation of the Traditional Thin Blue Line Flag incorporating a black and white American flag with one blue stripe was subsequently created as a sign of support for law enforcement officers (hereinafter referred to as the "Thin Blue Line American Flag"); and

**WHEREAS**, over time, and partially in negative response to the "Black Lives Matter" flag, the Thin Blue Line American Flag has also come to represent opposition to racial justice movements, including the Black Lives Matter cause, and in some instances has become a symbol of white supremacy, and is recognized as such by individuals and communities of color; and

**WHEREAS**, the Board of Commissioners has received public comment from many Springfield Township (hereinafter referred to as the "Township") residents suggesting that any continuing display of the Thin Blue Line American Flag after its usurpation by white supremacist groups, appears to express support for the systemic

oppression of certain members of the Township community, notwithstanding the original intent to simply support police departments and their officers; and

**WHEREAS,** the publicly visible display of the Thin Blue Line American Flag symbol by Township employees while working for the Township (or off-duty while in uniform) or the installation or affixation of the Thin Blue Line American Flag symbol on any Township-owned property by any person, is contrary to the core values of the Township, and impedes efforts to build trust among all citizens in the policing services provided by the Township through its well-respected Police Department.

**NOW, THEREFORE, BE IT RESOLVED**, that the Board of Commissioners of Springfield Township does, as a matter of respect and sensitivity to all the citizens of the Township, hereby prohibit the publicly visible display or use of any image which depicts the Thin Blue Line American Flag symbol by any Township employee, agent or consultant and in an effort to be clear and as reasonably limited as possible, specifically prohibits the following:

1) The publicly visible depiction of the symbol on the clothing or skin of any Township employee, agent or consultant while on duty, during the workday of the individual or while representing the Township in any way (specifically including the off-duty time of any such individual if still wearing the Township uniform).

2) The publicly visible depiction of the Thin Blue Line American flag symbol on any personal property of a township employee, agent or consultant, which is brought into the township building, and which, in the reasonable opinion of the Township Manager, is placed in a location likely to be seen by a member of the public while visiting the township building.

3) The display, by installation or affixation of a publicly visible depiction of the symbol, on township owned property (including township vehicles), by any person.

ECF No. 1-5

Five days after the Township adopted the Resolution, Township Manager Taylor issued a memorandum to all township employees regarding the Resolution. ECF No. 1-6. The Memorandum states that the Township's Board of Commissioners has adopted the Resolution which "prohibit[s] the visible display or use of the 'Thin Blue

Line American Flag' symbol." *Id.*  The Memorandum is express that "the [R]esolution is effective immediately." The Memorandum requires all employees with "any personal property with the [Thin Blue Line American Flag] symbol on it, and that [] is located in such a place where it is likely to be seen by a member of the public" to "remove it from the premises, or relocate it to a place where it is not likely to be seen by a member of the public while visiting the township building." *Id.* The Memorandum also includes a copy of the Resolution. *Id.*

### IV.   PLAINTIFFS' DISPLAYS OR DEPICTIONS OF THE THIN BLUE LINE AMERICAN FLAG SYMBOL IN THE TOWNSHIP BUILDING AND ON TOWNSHIP OWNED PROPERTY.

Plaintiff, Christian Wilbur, is a police officer employed by the Springfield Township Police Department. Compl., ECF No. 1, ¶ 3; Ans., ECF No. 42, ¶ 3. Christian Wilbur holds the rank of Sergeant.[2] Deposition of Christian Wilbur ("Wilbur dep."), 15:2-3 at Ex. "1."

Plaintiff, Robert Baiada, is a police officer employed by the Springfield Township Police Department. Compl., ECF No. 1, ¶ 4; Ans., ECF No. 42, ¶ 4. He holds the rank of detective. [3] Deposition of Robert Baiada ("Baiada dep."), 12:15, 13:17-18 at Ex. "2."

Plaintiff, Chris Calhoun, is a police officer employed by the Springfield Township Police Department. Compl., ECF No. 1, ¶ 5 Ans.; ECF No. 42, ¶ 5. Chris Calhoun holds the rank of Corporal. [4] Deposition of Christopher Calhoun ("Calhoun dep."), 16:1-5 at Ex. "3."

---

[2] Christian Wilbur is referred to as " Sergeant Wilbur."
[3] Robert Baiada is referred to as "Detective Baiada."
[4] Chris Calhoun is referred to in this statement as "Corporal Calhoun."

Plaintiff, Springfield PBA, is the collective bargaining unit for police officers employed by the Township. Wilbur dep., 23:18-20 at Ex. "1." Springfield PBA represents the interest of its members in legal, legislative, and labor related matters. Declaration of Christian Wilbur ("Wilbur Dec."), ECF No. 2-4, ¶ 3. Sergeant Wilbur, Detective Baiada, and Corporal Calhoun are members of the Springfield PBA. Compl., ECF No. 1, ¶¶ 3-5; Ans., ECF No. 42, ¶¶ 3-5. Indeed, every police officer employed by the Township is a member of the Springfield PBA, except for the police chief and lieutenant. Calhoun dep., 23:12-14 at Ex. "3." Moreover, Sergeant Wilbur is the president of the Springfield PBA, Wilbur dep., 22:10-12 at Ex. "1," and Corporal Calhoun serves as its vice-president. Calhoun dep. 23:3-5 at Ex. "3."

Plaintiff, Fraternal Order of Police Pennsylvania Lodge ("PA FOP"), is the state lodge of the Fraternal Order of Police, which has more than 2,100 lodges and more than 364,000 members in the United States. Declaration of Joseph Regan ("Regan dec."), ECF No. 2-3, ¶ 2. The PA FOP represents the interests of Pennsylvania active and retired law enforcement officers of all ranks and branches of government. *Id.*, ¶ 4. It is committed to improving the working conditions and quality of life issues for law enforcement officers through education, legislation, litigation, and employee representation. *Id.*, ¶ 5. 13. The PA FOP represents its members in legal and legislative matters. *Id.* Members of the PA FOP are employed by the Springfield Township Police Department. *Id.*, ¶ 6. Through a resolution at its national conference, the Fraternal Order of Police has affirmed its support for the

Thin Blue Line American Flag by law enforcement and the communities they protect. *Id.*, ¶ 7.

Plaintiffs and other members of the Springfield PBA display and depict the Thin Blue American Flag on Township property. Baiada decl., ECF No. 2-1, ¶ 4; Calhoun decl., ECF No. 2-2, ¶ 4, Wilbur decl., ECF No. 2-4, ¶ 9; Wilbur dep., 63:24, 64:1-4 at Ex. "1." The police station is located within the main Township building located at 1510 Paper Mill Road, Wyndmoor, Pennsylvania. Calhoun dep., 34:16-23 at Ex. "3." The Thin Blue Line American Flag is affixed, displayed, and depicted on various locations within the police station, including on:

- a bulletin board displaying patches from other police departments depicting the Thin Blue Line American Flag, Calhoun dep. 55:15-19 at Ex. "3,"

- a wooden Thin Blue Line American flag hanging on a wall in the police station, Wilbur dep., 64:1-13 at Ex. "1;" Calhoun dep., 55:12-15 at Ex. "3,"

- a Thin Blue Line American Flag hanging on a wall in the station, Wilbur dep., 64:15-18 at Ex. "1,"

- Thin Blue Line American Flags displayed in the traffic safety office, Calhoun dep., 55:11-23 at Ex. "3,"

- a 2'x2' wooden ballot type box in the police station, Wilbur dep., 64:20-24 at Ex. "1,"

- a recycling bin. Calhoun dep., 54:1-14 at Ex. "1," and

- on challenge coins displayed on desks in the police station, Wilbur dep, 65:12-20 at Ex. "1."

The Springfield PBA also sponsors the Township Little League and softball league whereby the Springfield PBA Logo is displayed on uniforms and a banner on the outfield wall. Calhoun dep., 34:2-13 at Ex. "3.". Plaintiffs would like to display and depict the Thin Blue Line American flag on other Township property, including at the pistol range, Wilbur dep., 81:18-24 at Ex. "1," and at the Springfield PBA table during community day, *Id.*, 84:21-24, 85:1-7 at Ex. 1."

Plaintiffs would like to continue to display the Thin Blue Line American flag on Township property now and in the future. Baiada decl., ECF No. 2-1, ¶ 7; Calhoun decl., ECF No. 2-2, ¶ 7; Wilbur dec., ECF No. 2-4, ¶¶ 11, 15.  However, Wilbur, Baiada, Calhoun, and other members of the Springfield PBA fear the Township will take punitive action against them if they continue to display or depict the Thin Blue Line American Flag. Baiada decl., ECF No. 2-1, ¶ 9; Calhoun decl., ECF No. 2-2, ¶ 9; Wilbur dec., ECF No. 2-4, ¶ 18. If the Resolution is not permanently enjoined, Sergeant Wilbur, Detective Baiada, Corporal Calhoun, and other members of the Springfield PBA will self-censor and not exercise their First Amendment rights for fear of disciplinary action.  See Supplemental Declaration of Christian Wilbur, ¶¶ 3-4, at Ex. "8," Supplement Declaration of Robert Baiada, ¶ 3, at Ex. "9," Supplement Declaration of Chris Calhoun, ¶ 3, at Ex. "10."

ARGUMENT

I.   EACH PLAINTIFF HAS STANDING.

   A.   SERGEANT WILBUR, DETECTIVE BAIADA, AND CORPORAL CALHOUN EACH
        HAVE STANDING.

Sergeant Wilbur, Detective Baiada, and Corporal Calhoun have Article III standing because they allege (1) an injury in fact, (2) caused by defendants' conduct – the Resolution – and (3) that can be remedied by the Court. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-158 (2014). In a First Amendment case, like this one, "a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* at 159. Under this standard, Sergeant Wilbur, Detective Baiada, and Corporal Calhoun have shown they have suffered an injury in fact.

   1.  The constitutional interest.

Sergeant Wilbur, Detective Baiada, and Corporal Calhoun clearly have a constitutional interest in affixing, displaying, and depicting the Thin Blue Line American Flag. As this Court has already ruled, "speech on a public issue, such as political and social-protest speech—like the Thin Blue Line American Flag—is of immense public value, regardless of whether the citizens in Springfield Township agrees with the viewpoint expressed" and "the Thin Blue Line American Flag is likely of immense First Amendment 'value' regardless of whether it is displayed to show support for the police or as a counter to the Black Lives Matter movement, because in either case, it is speaking to an issue of substantial public importance." *Fraternal Ord. of Police*

12

*Pennsylvania Lodge v. Twp. of Springfield*, ____ F. Supp. 3d. _____, 2023 WL 2839093, at *12 (E.D. Pa. 2023), fn 5.; ECF No. 34. Accordingly, Sergeant Wilbur, Detective Baiada, and Corporal Calhoun have a constitutionally protected interest in displaying or depicting the Thin Blue Line American Flag.

### 2. THE RESOLUTION "ARGUABLY PROSCRIBES" PLAINTIFFS' SPEECH.

The Resolution arguably proscribes the constitutionally protected conduct that plaintiffs wish to continue to engage in.

### a. The Resolution broadly prohibits all displays or depictions of the Thin Blue Line American Flag by Township employees, agents, and consultants.

The prohibitions section of the Resolution begins with a broad, and purposely broad, sentence stating that it "prohibit[s] the publicly visible display or use of any image which depicts the Thin Blue Line American Flag symbol by any Township employee, agent or consultant." Resolution, ECF 1-5, p. 1. That sentence contains no limitations on when, how, or where a Township employee, agent, or consultant displays or depicts the Thin Blue Line American Flag and prohibits all current and future displays of the Thin Blue Line American Flag by plaintiffs.

Joined to opening sentence with the conjunctive "and" is more specific language that states "*to be clear* and reasonably limited as possible, specifically prohibits" the categories of conduct outlined in three subsequent paragraphs. *Id.* (emphasis added) The language that follows the conjunction and the three specific examples of prohibited conduct do not cabin the broad prohibition imposed in the opening sentence.

First, in construing a statute, when, as here, the specific follows the general, the general should control. "Following the general term with the specifics can serve the function of making doubly sure that the broad (and intended to be broad) general term is taken to include the specifics. . . the enumeration of the specifics can be thought to perform the belt-and-suspenders function." Antonin Scalia and Byran A. Gardner, Reading the Law: The Legal Interpretation of Texts, 204, (1st. ed. 2012); *see also, Bragdon v. Abbott*, 524 U.S. 624, 639, (1998) ("use of the term 'such as' confirms, the list is illustrative, not exhaustive.")  This is precisely the case here. The Resolution starts with a broad general prohibition and follows with specifics to clarify and to make "doubly sure" that the general prohibition includes the specifics. The specifics that follow in the three enumerated paragraphs "perform the belt-and-suspenders function." *Id.* Thus, the three specified prohibitions are merely examples of conduct that the Resolution prohibits. They are illustrative of the general prohibition and should not be read to be an exhaustive list of prohibited conduct.

Reading the Resolution's prohibitions as cabined to the three examples provided in the enumerated paragraphs would also violate "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31, (2001). If the Resolution is read to prohibit only the conduct identified in the three enumerated paragraphs, then the broad prohibition in the opening sentence is superfluous. Indeed, a limited reading of the

Resolution requires the Court to ignore the opening sentence entirely and to treat it as nonexistent.

If the Township wanted to limit the sweep of the Resolution it could have said so. It could have expressly stated that the Resolution prohibits only the following three categories of displays, while expressly permitting all other non-prohibited displays. Instead, the Township chose to start the Resolution with a broad probation and "to be clear" follows with specific examples of what is prohibited. That broad prohibition has meaning and should not be ignored. Moreover, the language the Resolution uses to introduce the specified examples of prohibited conduct is also relevant. The clause following the conjunction "and" begins by stating "in an effort to be clear." This indicates that what follows is to clarify, using specific examples, of what is prohibited by the opening sentence. Under a broad view of Resolution's prohibitions, there can be no dispute that it arguably regulates the current conduct of plaintiffs. Sergeant Wilbur, Detective Baiada, Corporal Calhoun and other members of the Springfield PBA who display and depict the Thin Blue Line American Flag symbol in various ways both on and off Township-owned property. And who wish to continue to display and depict the Thin Blue Line American Flag symbol both on and off Township-owned property. Baiada dec., ECF 2-1, ¶ 7, Calhoun dec., ECF 2-2, ¶ 7, and Wilbur dec., ECF 2-4, ¶¶ 11, 15.

The Thin Blue Line American Flag is displayed on clothing they wear. Springfield PBA displays it on its website, https://stpbamontco.org/, at fundraisers, events supporting Springfield PBA, and on merchandise. Compl., ECF No. 1, ¶ 25,

Ans.; ECF No. 42, ¶ 25. It is displayed on items within the Township building, including on the patch board in the police station, on flags affixed to the walls of the police station, on personal items at desks, and on items like waste baskets and ballot boxes. Calhoun dep. 55:11-23 at Ex. "3," Wilbur dep., 64:15-24 at Ex. "1." The Springfield PBA also sponsors the Township Little League and softball league whereby the Springfield PBA Logo is displayed and affixed on uniforms and a banner on the outfield wall. Calhoun dep., 34:2-13 at Ex. "3." Moreover, plaintiffs would like to display, depict, and affix the Thin Blue Line American Flag at the Township owned pistol range and at the Springfield PBA table during community day.  Wilbur dep., 81:18-24, 85:1-4 at Ex. "1."

Accordingly, plaintiffs' current displays and depictions of the Thin Blue Line American Flag and desired future displays arguably fall within the Resolution's prohibitions.

### b. The Resolution arguably proscribes plaintiffs' speech under a narrow interpretation.

Still, the Resolution arguably proscribes plaintiffs' conduct even if the Court were to adopt a narrower interpretation of its prohibitions limited to the only to the categories of conduct in the enumerated paragraphs in the prohibitions section.

### i. Subpart 1.

 Paragraph 1 of the prohibition section of the Resolution ("Subpart 1") prohibits the depiction of the Thin Blue Line American Flag on any clothing worn by Plaintiffs (a) while on duty, (b) during the workday of the individual, *or* (c) while representing the Township in any way. The list of prohibitions in Subpart 1 is joined by the

disjunctive "or." When used in a statute, the word "or" is "almost always disjunctive." *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) "Under the conjunctive/disjunctive canon, *and* combines items while *or* creates alternatives." Antonin Scalia and Byran A. Gardner, Reading the Law: The Legal Interpretation of Texts, 114, (1st. ed. 2012) (emphasis original) Accordingly, an employee violates Subpart 1 by doing *any* of the following: (a) wearing the clothing depicting the Thin Blue Line American Flag on duty, (b) wearing clothing depicting the Thin Blue Line American Flag during the workday, *or* (c) displaying or depicting the Thin Blue Line American Flag "while representing the Township *in any way.*"

Sergeant Wilbur, Detective Baiada, Corporal Calhoun each wear clothing displaying or depicting the Thin Blue Line American Flag. If they wear that clothing while on duty *or* during the workday, their conduct arguably runs afoul of Subpart 1. Yet, Subpart 1 arguably prescribes Sergeant Wilbur, Detective Baiada, Corporal Calhoun from wearing clothing displaying or depicting the Thin Blue Line American Flag even when not on duty and away from the Township property because Subpart 1's prohibitions apply not just when an employees is on duty but also "while representing the Township *in any way.*"

Sergeant Wilbur, Detective Baiada, Corporal Calhoun are widely known by the public as members of the Township's police department and consider themselves to always be representing the Township. Baiada decl., ECF No. 2-1, ¶ 8; Calhoun decl., ECF No. 2-2, ¶ 8; Wilbur dec., ECF No. 2-4, ¶ 16.

Accordingly, Subpart 1 arguably proscribes Sergeant Wilbur's, Detective Baiada's, and Corporal Calhoun's conduct.

### ii.     Subpart 2.

Paragraph 2 of the prohibition section of the Resolution ("Subpart 2") prohibits the "publicly visible depiction of the Thin Blue Line American Flag on any personal property of a township (sic), agent or consultant, which is brought into the township (sic) building (except prior to and subsequent to reporting to duty or any official assignment for the Township) and which, in the reasonable opinion of the Township Manager, is placed in a location likely to be seen by a member of the public while visiting the township building." Subpart 2 arguably proscribes plaintiffs' conduct.

The flags displayed on the police department walls, the challenge coins on officers' desks, and the items on the bulletin boards all have been brought into the Township building.  They are also located "in the reasonable opinion of the Township Manager, . . .in a location likely to be seen by a member of the public while visiting the building." Each year the Township participates in "National Night Out". Calhoun dep. 39:13-24, 40:1-2 at Ex. 3. During that event, the Township offers tours of the police department. *Id.*, 40:23-24, 41:1-3 at Ex. "3." Before a recent "National Night Out" event, Township Manager Taylor required the displays and depictions of the Thin Blue Line American Flag to be removed or covered up while members of the public visited the building because they could be seen by visiting members of the public. *Id.* 103:23-24, 104:1-18 at Ex "3."

18

Accordingly, Subpart 2 arguably proscribes Sergeant Wilbur's, Detective Baiada's, and Corporal Calhoun's conduct.

### iii.    Subpart 3.

In all events, plaintiffs' current displays of the flag and desired future displays run afoul of paragraph 3 of the Resolution's prohibition section ("Subpart 3"). Subpart 3 broadly prohibits all displays "by affixation or installation" of the Thin Blue Line American Flag on any "township (sic) owned property (including township vehicles) *by any person.*"

There is no doubt that the Thin Blue Line American Flags Sergeant Wilbur, Detective Baiada, Corporal Calhoun, and the Springfield PBA display are "affixed" to Township-owned property. As this Court held:

> "the term "affix," as used in [Subpart 3], means to "fix, fasten, or attach (a thing) physically to something, as with a nail, string, glue, etc.; to stick or fix in place." Affix, v., Oxford English Dictionary, at 1.b. https://www.oed.com/view/Entry/3435?rskey=M8OFhx&result=2&is-Advanced=false#eid (last visited June 12, 2023). This definition is not limited to permanent attachments and would seem to include temporary installations, such as the hanging of posters in a public park or the installation of a sign on a fence at the little league baseball field."

*Pennsylvania State Lodge Fraternal Ord. of Police*, 2023 WL 4216095, at *6; ECF 40. In addition to posters in a public park or installations of a sign on a little league fence, the term "affix" includes the hanging of flags and patches that display and depict the Thin Blue Line American Flag to the walls of the police department.  Accordingly, Subpart 3 arguably proscribes plaintiffs' conduct.

### 3.  The Court recognizes the credible threat of enforcement.

As the Court recognizes, the Resolution is enforceable against Township employees and Sergeant Wilbur, Detective Baiada, and Corporal Calhoun are Township employees. *Pennsylvania State Lodge Fraternal Ord. of Police v. Twp. of Springfield*, 2023 WL 4216095, at *6 (E.D. Pa. 2023); ECF No. 40. In the January 11, 2023, the Township announced that the Resolution's prohibitions were "effective immediately." That pronouncement came from Township Manager Taylor who maintains firing and disciplinary authority over Township employees. Taylor dep., 10:1-4 at Ex. "7." Additionally, defendant Susan Ratsavong told Sergeant Wilbur that the Township would do everything in its power to get the Springfield PBA to change the Springfield PBA Logo. Wilbur Ans. to Int. 2(c)(iii) at Ex. "6."

These threats coupled with previous threats of litigation make Sergeant Wilbur's, Detective Baiada's, and Corporal Calhoun's fear that punitive action would be taken against them if they continue to display or depict the Thin Blue Line American Flag not "imaginary or wholly speculative." *Susan B. Anthony List*, 573 U.S. at 158. Plaintiffs do not need to wait for the other shoe to drop - through litigation, fines, negative employment consequences, or otherwise - to demonstrate standing. *Id.* (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1972) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.")

Moreover, when the government enacts a regulation that is meant to merely deter speech, it creates "an impermissible chill" on first amendment protected speech

20

which is sufficient to confer standing. *Aiello v. City of Wilmington, Del.*, 623 F.2d 845, 857 (3d Cir. 1980); *Greenberg v. Haggerty*, 491 F. Supp. 3d 12, 20 (E.D. Pa. 2020) ("a plaintiff's allegation that the law has or will have a chilling effect on the plaintiff's speech is sufficient to satisfy the injury-in-fact requirement."); *ACLU v. Reno*, 31 F. Supp. 473, 497 (E.D.Pa. 1999) ("a chilling effect could result in the censoring of constitutionally protected speech, which constitutes an irreparable harm to the plaintiffs.") Here, plaintiffs declare they will self-censor if the Resolution becomes effective. *See* Ex. 8-10.

Furthermore, this Court should "assume a credible threat of prosecution in the absence of compelling contrary evidence." *Reno*, 31 F. Supp. 2d at 480. The Township has refused to state they will *never* enforce the Resolution. To the contrary, the Township admits it is enforceable. Still, even if this present class of defendants stated they would not enforce the Resolution, that does not mean a future slate of commissioners would also not enforce it.

### B. Plaintiffs have standing to challenge the entire Resolution because it is overly broad.

While plaintiffs do suffer an injury in fact from each subpart of the Resolution, that is not necessary to confer standing to challenge the entirety of the Resolution. Because this case is a facial challenge under the First Amendment, plaintiffs have standing to challenge the entirety of the Resolution regardless of whether they have engaged or are likely to engage in conduct that is arguably proscribed by each of the Subparts.

It is well settled that "litigants asserting facial challenges involving over-breadth under the First Amendment have standing where their own rights of free expression are [not] violated because of a judicial prediction or assumption that the statute's very existence may cause others *not before the court* to refrain from constitutionally protected speech or expression." *McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 238 (3d Cir. 2010) (citations omitted); *see also, Pitt News v. Fisher*, 215 F.3d 354, 363 (3d Cir.2000) ("[W]hen a plaintiff attempts to challenge a statute as being an overbroad restriction on First Amendment rights, the requirement that an impediment exist to the third party asserting his or her own rights should be relaxed[.]"); *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 957–58, (1984) ("the Court has allowed a party to assert the rights of another without regard to the ability of the other to assert his own claims and with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.") The point of an overbreadth challenge is "to permit the claimant to strike the law in its entirety based on its application to other individuals not before the court." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009).

The Third Circuit generously applies the overbreadth doctrine to confer standing.  In *McCauley*, the Third Circuit considered a student's standing to challenge a college speech code under the First Amendment. On cross examination, the student conceded that his rights were not violated by certain portions of the speech code that he challenged. *McCauley*, 618 F.3d at 237-238. Yet, the Third Circuit found that this

was no impediment to his standing to raise a facial challenge to the section of the speech code he had not violated. *Id.* at 238. ("Despite McCauley's trial testimony that he suffered no deprivations from Paragraphs B, H, and R, we conclude that he has standing to challenge those paragraphs.") The Third Circuit concluded that plaintiff's admissions were not fatal to his standing to challenge certain section of the speech code because we should "freely grant[ ] standing to raise overbreadth claims [.]" *Id.* (citation omitted")

Accordingly, plaintiffs have standing to bring a facial challenge to the *entirety* of the Resolution without having to show they suffer harm from each Subpart. So long as they have standing to challenge one part, they have standing to challenge all parts. Plaintiffs do not need to show they have suffered or will suffer a deprivation of First Amendment rights under each Subpart. Simply put, facial challenges to the constitutionality of a statute based on the First Amendment do not require that there be a plaintiff with traditional standing for each prohibition the statute imposes.

### C. THE FRATERNAL ORDER OF POLICE AND SPRINGFIELD TOWNSHIP PBA HAVE STANDING.

"An association has standing to bring suit on behalf of its members." *Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 291 (3d Cir. 2002). To establish associational standing, an entity must show that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

First, Sergeant Wilbur, Detective Baiada, and Corporal Calhoun are members of the Springfield PBA and PA FOP and they each have standing.  Second, as the Court has already held, this litigation is germane to the purpose of the Springfield PBA. *Pennsylvania State Lodge Fraternal Ord. of Police*, 2023 WL 4216095, at *7 ("The Court also finds that the PBA seeks to protect interests germane to its purposes.")  Finally, the Court has already held "that neither the claim nor the relief sought in this action requires participation of individual members in the lawsuit." *Id.* Accordingly, the Springfield PBA and PA FOP have associational standing.

## D. FRATERNAL ORDER OF POLICE PENNSYLVANIA LODGE HAS STANDING UNDER THE ONE-PLAINTIFF RULE.

As the Court also recognizes, under the one-plaintiff rule, so long as one plaintiff has standing to seek prospective relief, all remaining plaintiffs have standing if they seek the same prospective relief and those other plaintiffs do not need to demonstrate independent Article III standing. ECF 40, p. 14-15; *See also Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) ("Under our precedents, at least one party must demonstrate Article III standing for each claim for relief.") *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007) ("Only one of the petitioners needs to have standing to permit us to consider the petition for review."); *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006) ("[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement."); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986) (ruling that "[w]e therefore need not consider the standing issue as to the Union or Members of Congress" after holding that "[i]t is clear that members of the Union, one of

24

whom is an appellee here, will sustain injury by not receiving a scheduled increase in benefits.")

Accordingly, since Sergeant Wilbur, Detective Baiada, Corporal Calhoun, and Springfield PBA have standing, under the one-plaintiff rule the PA FOP also has standing.

## II.   THE RESOLUTION IS AN UNCONSTITUTIONAL VIEWPOINT BASED REGULATION OF SPEECH.

"In First Amendment cases . . . 'the [g]overnment bears the burden of proof on the ultimate question of [a statute's] constitutionality." *Reilly v. City of Harrisburg*, 858 F.3d 173, 180 (3d Cir. 2017). The Township cannot come close to meeting its burden because the Resolution, on its face, discriminates on viewpoint.

"Viewpoint discrimination is a poison to a free society." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019) (Alito, J concurring) "A law found to discriminate based on viewpoint is an egregious form of content discrimination, which is presumptively unconstitutional." *Matal v. Tam*, 582 U.S. 218, 248 (2017) "While restrictions based on content must satisfy strict scrutiny … those based on viewpoint are prohibited." *Minnesota Voters Alliance*, 138 S. Ct. at 1885 (emphasis added); *see also Greenberg*, 593 F. Supp. 3d at 212 (holding that once "the Court has determined [when a regulation] constitutes[s] viewpoint-based discrimination, there is no need to analyze [the regulation] under either strict scrutiny or intermediate scrutiny.")

The Resolution is viewpoint discrimination plain and simple, a fact defendants concede. April 3, 2023, Oral Arg. Tr. At 40:2-9, 45:21-46:18. Beside defense counsel's concession at argument, defendants have never otherwise disputed that the

Resolution is a form of viewpoint discrimination. Nor could they, the Resolution plainly prohibits the display and depiction of the Thin Blue Line American Flag, and only that flag, because of the message it allegedly sends.

By banning the Thin Blue Line American Flag based on the message that it allegedly sends, the Township advances the interests of opponents of the Thin Blue Line American Flag and silences proponents of it, like plaintiffs. More specifically, it places the interests of those favoring "racial justice movements, including the Black Lives Matter cause" above the interests of those wishing to show support for law enforcement officers. It plainly promotes the views of those that believe the Thin Blue Line American Flag "expresses support for systemic oppression of certain members of the Township community" while suppressing the views of those who believe the flag shows "support for law enforcement officers." Indeed, persons favoring "racial justice movements" and Black Lives Matter is free to express their support in any manner possible, regardless of the gravity of offense their expressions might give others. They can also express opposition to law enforcement or opposition to the Thin Blue Line American Flag. Any person, including any Township employee, agent, or consultant, could display or depict a flag or wear clothing saying "F*ck the Police." But a person could not respond with a display or depict the Thin Blue Line American Flag. The Township "has no such authority to license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 391–92 (1992) (Scalia, J.).

The Township cannot prohibit the display or depiction of the Thin Blue Line American flag because they disagree with the political, social, or symbolic message it conveys. *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 828 (1995) ("Discrimination against speech because of its message is presumed to be unconstitutional.") And the Township can no more ban it because certain members of the public may view the Thin Blue Line American flag negatively. *Iota XI Chapter of Sigma Chi Fraternity v. George Mason University*, 773 F.Supp. 792, 795 (E.D.Va.1991), aff'd, 993 F.2d 386 (4th Cir.1993) ("the First Amendment does not countenance such viewpoint discrimination, even for the purpose of suppressing speech that may be perceived as racially degrading or hostile.") That some members of the public may perceive the continued display of the Thin Blue Line American Flag negatively simply cannot be used to support a restriction of First Amendment rights. *Coates v. City of Cincinnati*, 402 U.S. 611, 615 (1971) ("mere public intolerance or animosity cannot be the basis for abridgment of [] constitutional freedoms.") *Greenberg v. Goodrich*, 593 F. Supp. 3d 174, 215 (E.D. Pa. 2022) ("the government cannot make general pronouncements and use those aspirations to restrict free speech without any evidence that the proposed regulation serves a particular compelling interest.")

The Township has also repeatedly explained away the viewpoint bias of the Resolution by claiming it only discriminates against "offensive" speech. (Jan. 27, 2023, Arg. Tr. 19:10-13, 20:10-22; April 3, 2023, Oral Arg. Tr. At 40:2–9, 45:7–46:14) But the Resolution's viewpoint bias is made no more palatable because it regulates

only "offensive speech." There is no exception to first amendment protections for speech that some might find offensive, distasteful, or controversial. For starters, "giving offense is a viewpoint." *Matal v. Tam*, 582 U.S. 218, (2017). Moreover, "if there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson,* 491 U.S. 397, 414 (1989). Therefore, the First Amendment protects "a wide variety of speech that listeners may consider deeply offensive, including statements that impugn another's race or national origin or that denigrate religious beliefs." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 206 (3d Cir. 2001). And the Supreme Court has repeatedly held that the First Amendment protects a range of offensive, controversial, repulsive, and vile speech. *See Texas v. Johnson* (striking state law criminalizing burning of American flag; *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (First Amendment protects publication of parody ad depicting respected Reverend as having a drunken incestual relationship with his mother.); *Virginia v. Black*, 538 U.S. 343 (2003) (First Amendment protects the right to burn a cross to express racial superiority); *Matal v. Tam*, 137 S.Ct. 1744 (2017) (First Amendment protects against denial of trademark for the racial slur "Slants.") *United States v. Stevens*, 559 U.S. 460 (2010) (striking statute criminalizing depictions of animal cruelty as facially invalid under the First Amendment.)

The viewpoint bias of the Resolution is particularly pernicious here. If defendants were permitted to engage in viewpoint discrimination because some might find a symbol offensive, almost all First Amendment protections would quickly dissolve

and the government could easily ban any manner of speech that some might find offensive, including ordinary political speech. Indeed, if the Township's arguments are validated, the Township, or any other government actor, could easily ban the display of support for political candidates whose views some might find offensive, hateful, or racist while permitted displays of all other candidates. How easy would it be? Here, all the Township would need do is to modify the Resolution by replacing "Thin Blue Line American flag" in the Resolution with the "Name of Offensive Candidate."

Accordingly, the Court should grant summary judgment in favor of plaintiffs.

## III.   THE RESOLUTION IS AN UNCONSTITUTIONAL REGULATION OF GOVERNMENT EMPLOYEE SPEECH.

### A.   THE TOWNSHIP CANNOT REGULATE EMPLOYEE SPEECH BASED ON VIEWPOINT.

The Township has also suggested that its viewpoint discrimination is permissible because it is a regulation of government-employee speech. But the toxicity of viewpoint discrimination is equally potent to the constitutionality of a regulation of government-employee speech. "[V]iewpoint-based government regulations on speech are nearly always presumptively suspect" even in the government employer context. *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 108 (3d Cir. 2022).[5] Accordingly, the Third Circuit requires viewpoint neutrality when government-employee is speech is regulated. *Id.* 105-108. The Third Circuit's position is consistent with the holdings of several other Circuits. *Id.* at 107-108.

---

[5] The Third Circuit has recognized one narrow exception to this rule. In *Curinga v. City of Canton*, 357 F.3d 305 (3d Cir. 2004), the Court permitted a public employer to terminate an employee holding a policymaking position based on the employee's political affiliation. No such circumstances exist here.

Simply put, a finding that the Resolution is viewpoint based "end[s] the matter." *Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019). It is immaterial whether the Resolution is applied to employee speech or speech of the public at large. The Resolution's viewpoint discrimination means it is unconstitutional in either circumstance.

### B. THE RESOLUTION DOES NOT SATISFY THE *NTEU* TEST.

Nonetheless, even if the Resolution were subject to a government-employee speech analysis, it would still be unconstitutional because it does not satisfy the test for prior restraint of government-employee speech under *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454 (1995) ("*NTEU*"). As the Court has held, *NTEU* governs this case. *Fraternal Ord. of Police Pennsylvania Lodge*, 2023 WL 2839093 at *13 (ECF No. 34). Under *NTEU*, a government defendant seeking to uphold the constitutionality of a prior restraint regulation of employee speech, like the Resolution here, "bears the burden of showing that the necessary impact on the actual operation of the Government outweighs that [the constitutional interest]." *Amalgamated*, 39 F.4th at 105 (quoting *NTEU*, 513 U.S. at 468.) "To satisfy this requirement, [the government] must make two showings: first, that it has [identified] real, not merely conjectural harms; and second, that the ban as applied ... addresses these harms in a direct and material way." *Id.* (cleaned up) (citations omitted). The Township cannot make either showing.

In *Amalgamated*, the Third Circuit considered the constitutionality of a regulation of the Port Authority of Allegheny County that prohibited employees from wearing face masks that reflected political or social protest issues. In that case,

several Port Authority employees sued over the regulation because they wished to wear masks expressing support for Black Lives Matter. *Id.* at 101. The Court applied the *NTEU* test to the regulation and found it unconstitutional. *Id.* at 104.

The Court first addressed whether the Port Authority had met its burden of proving that the regulation addressed a "real, not merely conjectural harm" not just to present operations but to future operations as well. *Id.* at 105. On this point, the Port Authority did present evidence that masks bearing political and social-protest messages caused controversy, including heated arguments between employees. *Id.* The Court also noted that the Black Lives Matter riots in the Summer of 2020 also caused disruptions to Port Authority services. *Id.* The Court concluded that while the Port Authority's fear that "Black Live Matter" masks might cause disruption, *in present,* was not merely conjectural, it failed to show that the "broad range of present and *future* expression its policy forbids will disrupt operations." *Id.* at 105-106.

The Court then addressed whether the Port Authority's regulation was narrowly tailored to address the perceived harms in a direct and material way. On this prong, the Court found the regulation to be both over inclusive and under inclusive. The Court found the regulation to be over inclusive because it swept "in a wide array of social-issue and political speech in which Port Authority employees have long engaged without causing disruption." *Id.* at 106. On the other hand, the Court found that the Port Authority's regulation was underinclusive because it permitted a wide variety of speech that "has the same, if not more, potential to cause disruption." *Id.* Accordingly, the Third Circuit upheld the district court's preliminary injunction

against the regulation because the Port Authority had not carried its burden to show that the regulation was narrowly tailored. *Id.*

Here, the Township fares worse than the Port Authority. First, the Port Authority's regulation was viewpoint neutral. It banned face masks expressing all "political or social protest." Here, the Resolution expressly bans only one message. Second, unlike the Port Authority, the Township has no evidence of any disruption in Township services because of the Thin Blue Line American Flag. And, even if it did, the Township cannot carry its burden to show that the Resolution is narrowly tailored to alleviate any disruptions.

### 1. The Township admits that displays of Thin Blue Line American Flag or the Springfield PBA Logo do not disrupt Township services.

The Township cannot overcome its threshold burden of showing real, not merely conjectural, disruptions in Township services because of displays or depiction of the Thin Blue Line American Flag. At his deposition, Township Manager Taylor[6] could not identify a single disruption of Township services because of the Thin Blue Line American flag or the Springfield PBA's logo.

> "**Q.** Are you aware of any disruptions in township services because of displays or depictions of the Thin Blue Line American Flag?
>
> **A.** No.
>
> **Q.** And are you aware of any disruptions in township services because of displays or depictions of the Thin Blue Line American Flag?
>
> **A.** No."

---

[6] Taylor testified as the Township's designee under Fed. R. Civ. P. 30(b)(6).  Taylor dep., 7:14-18.

Taylor dep. 26:9-16 at "7."

The Township also cannot identify any incidents of workplace acrimony, disruptions, or arguments involving Township employees related to the Thin Blue Line American flag or the Springfield PBA logo. Defs' Ans. to Int., ¶¶ 12, 13, 17 at Ex. "11." In fact, the Township admits it has not so much as received a complaint from any Township employee concerning or related to the Thin Blue Line American flag or the Springfield PBA logo. *Id.*, ¶¶ 6, 7, 15 at Ex. "11." In *Amalgamated*, the Port Authority could at least point to heated arguments between employees concerning controversial masks and Black Lives Matter masks particularly to show present disruption. Here, the Township can point to none.

Furthermore, any suggestion that the Resolution was passed to alleviate disruption in Township services is nakedly pretextual. The text of the Resolution is clear that the purpose of the Resolution is not to alleviate a disruption in government services, rather it was to alleviate concerns regarding how some citizens view the flag. The 6 "whereas" clauses that introduce the Resolution say nothing about the prohibitions being needed to ameliorate a disruption in Township services or to soothe workplace acrimony. ECF No. 1-5. Additionally, the Township states the Resolution is being enacted "as a matter of respect and sensitivity to all citizens," not as a reaction to the disruption of Township services. *Id.*

The closest that the Township comes to articulating a harm to Township services is by claiming the Thin Blue Line American Flag "impedes efforts to build trust among all citizens in policing services provided by the Township." ECF No. 1-5, p. 1.

But there no evidence that the Thin Blue Line American Flag has impeded trust in the police department. And any suggestion that the Township's police department is distrusted is contradicted by the Township's concession in the same sentence that its police department is "well-respected." *Id.*

In sum, when presented with the first test of *NTEU*, the Township fails miserably. The Resolution is nothing more than a proverbial cure (the Resolution) in search of a disease (white supremacy and racism). But the Township "must do more than simply posit the existence of the disease sought to be cured. It must demonstrate ... that the regulation will in fact alleviate these harms in a direct and material way." *Amalgamated*, 39 F.4th at 106. The Township's inability to offer evidence of any real harm is fatal to the Resolution. Without any evidence of a real and direct harm, the Township cannot show that the "broad range of present and future expressions" of the Thin Blue Line American Flag will disrupt operations. *Amalgamated*, 39 F.4th at 106.

### 2. The Resolution is not narrowly tailored.

Even if the Township could present evidence that the Thin Blue Line American Flag and the Springfield PBA Logo would disrupt present and *future* operations in the Township, the Resolution would still not survive constitutional scrutiny under *NTEU* because it is not narrowly tailored to ameliorate any harm.

The specific categories of display that the Township concede are banned appear completely arbitrary and lack any casual connection to the stated harms. The Township offers no evidence that any employee wearing clothing displaying or depicting

34

the Thin Blue Line American Flag has disrupted services. It offers no evidence that displays or depictions of the Thin Blue Line American Flag in the Township building, in areas "likely to be seen by a member of the public," has inflicted any real harm. Worse, the Township can hardly explain how a prohibition on the display of the Thin Blue Line American Flag "on township owned property . . . *by any person*" is narrowly tailored. Indeed, such a broad prohibition is the complete opposite.

Furthermore, like the regulation in *Amalgamated*, the Resolution is also both over inclusive on one hand and underinclusive on the other. If the Court accepts the Township's bald assertion that the Thin Blue Line American Flag "impedes efforts to build trust among all citizens in the policing services provided by the Township," then the Resolution is overly inclusive because, as this Court recognizes, the Resolution applies to *all* employees, consultants, or agents of the Township, not just police officers or those working with the police. It regulates the speech of employees that have nothing to do with the police department. The Resolution applies equally to a custodian as it does to a police officer, even though the custodian plays no role in the building trust between the police department and the community. The regulation of Township "agents and consultants" is even more opaque. The Township does not define who is an "agent or consultant" nor does it explain how agents and consultants play a role in building trust between the police department and citizens.

The Resolution is also underinclusive because it regulates only *one* form of speech that the Township alleges many in the public believe espouses a belief in white supremacy and a disregard to the racial justice movement. However, a Township

employee, agent, or consultant is free to engage in speech that evokes the same response from citizens, so long as it he does not use the Thin Blue Line American Flag to do it. Certainly, if the Thin Blue Line American Flag is disruptive because it expresses opposition "racial justice movements" and "Black Lives Matter," then all other speech expressing those view must be equally disruptive.  But the Resolution does not prohibit similar speech. A Township employee, agent, or consultant could also engage in speech directly opposing "racial justice movements," and Black Live Matter but cannot use Thin Blue Line American Flag to express opposition.

Conversely, a Township employee could display symbols that show *support* for racial justice movements and Black Lives Matter without any regard for the disruption those might cause. Indeed, a Township employee is free to display or depict symbols concerning controversial political and social issues that could be disrupting to the Township, such as support for controversial political candidates or the LGBTQ+ causes.  The Township must "show[ ] how the ban has any causal impact on its stated harms, so its failure to target equally disruptive speech is probative." *Amalgamated*, 39 F.4th at 107.

The Resolution is many things. It is sloppy, vague, and illogical to name several. What it is not, is narrowly tailored.

## IV.   THE RESOLUTION IS UNCONSTITUTIONALLY VAGUE AND OVERLY BROAD.

The Court can also declare the Resolution unconstitutional because it is vague and overly broad. "[V]agueness and overbreadth [are] logically related and similar doctrines." *Marshall v. Amuso*, 571 F. Supp. 3d 412, 425 (E.D. Pa. 2021) Under the

void for vagueness doctrine, "if a rule either fails to provide fair notice to people of ordinary intelligence or authorizes or even encourages arbitrary and discriminatory enforcement, it is void for vagueness." *United States v. Stevens*, 533 F.3d 218, 249 (3d. Cir. 2008) (citations omitted) "When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Greenberg*, 593 F. Supp. 3d at 222 (quoting F.*C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253-54 (2012)). Under the overbreadth doctrine, "a regulation is unconstitutional on its face on overbreadth grounds where there is a likelihood that the statute's very existence will inhibit free expression by inhibiting the speech of third parties who are not before the Court." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 214 (3d Cir. 2001)

## A. VAGUENESS

### 1. The Resolution is vague regarding to whom and where it applies.

The Resolution is unconstitutionally vague because it is not clear whether it applies to the public at large or only to Township employees, agents, and consultants. The Resolution vacillates between regulating Township, employees, agents, and consultants and "any person." In the sixth "whereas" clause, the Resolution states that the "installation or affixation of the Thin Blue Line American Flag symbol on any Township-owned *by any person*, is contrary to the core values of the Township." ECF No. 1-5, p. 1. Likewise, subpart 3 prohibits "the display, by installation or affixation of a publicly visible depiction of the symbol, on township owned property (including township vehicles), *by any person*." *Id.*, p. 2. Conversely, the opening sentences of the

prohibition section, subpart 1, and subpart 2 announce that the Resolution applies only to Township employees, agents, or consultants. *Id.*, p. 1.

The Resolution is also vague regarding where it applies. The title of the Resolution states it is "A RESOLUTION PROHIBITING THE DISPLAY OR USE OF THE THIN BLUE LINE AMERICAN FLAG ON **ALL** TOWNSHIP PROPERTY." ECF 1-5, p. 1. (emphasis added) Likewise, Subpart 3 states it applies to all township owned property. *Id.*, p. 2. Yet, other portions of the Resolution suggest it applies only to employee clothing or only areas within the Township building that can be seen by the public.

Thus, the text leaves a person to guess at what is restricted.

### 2. The Resolution is unconstitutionally vague because it fails to provide notice as to what it prescribes.

The Resolution is also vague regarding what it prohibits. While the Resolution proscribes certain conduct by Township employees during the workday, it also prohibits the "visible depiction of the [Thin Blue Line American Flag] on clothing or skin . . . *while representing the Township in any way*." Sergeant Wilbur, Detective Baiada, and Corporal Calhoun believe they are always representing the Township's Police Department.  Thus, the Resolution's vagueness leaves an employee to guess as to whether it applies exclusively while on duty or off-duty as well.

### 3. The Resolution is unconstitutional vague because its enforcement is arbitrary.

The Resolution is also unconstitutionally vague because it is capable of arbitrary application. The Resolution, in part, lets the subjective whims of the Township manager, defendant Taylor, dictate what is allowed and what is not. The Resolution prohibits any personal property "depict[ing] … the Thin Blue Line American flag" from being brought into the township building "which, in the reasonable opinion of the Township Manager, is placed in a location likely to be seen by a member of the public while visiting the township building." ECF No. 1-5, p. 1. Plaintiffs are left to guess as to what "reasonable opinion" of the Township Manager will be at any given time. The "reasonable opinion" of the Township Manager today could be different than the "reasonable opinion" tomorrow. Moreover, Taylor's reasonable opinion is likely to differ from the reasonable opinion of future Township Managers. Accordingly, the Resolution is vague in its prohibitions regarding displays within the Township building.

### B. OVERBREADTH.

The Resolution is also overly broad. It sweeps in constitutional protected activity. Plaintiffs have already explained how the text of the opening sentence of the Resolution's prohibition section contains no limitations regarding when and where an employee may display or depict the Thin Blue Line American Flag. That would prohibit the display or depiction Thin Blue Line American Flag at their home, on their personal vehicles, and temporarily while in a park or other public location. This is all clearly protected First Amendment activity.

Likewise, Subpart 3, which bars **any person** from "displaying, by installation or affixation [] a publicly visible depiction of the [Thin Blue Line American Flag] on township owned property" would include traditional public forums like parks and sidewalks. *Id.*, p. 2. Under Subpart 3, a rally in a Township-owned Park where Thin Blue Line American Flags are installed into the ground, where posters are affixed to telephone polls, or where flags are hung from Township owned property all would be banned. Accordingly, the Resolution is unconstitutionally overbroad.

## CONCLUSION

"No official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *West Virginia Board of Education v. Barnette*, 319 U.S. 624, 642 (1943). Based on the foregoing, plaintiffs, Fraternal Order of Police Pennsylvania Lodge, Springfield Township Police Benevolent Association, Christian Wilbur, Robert Baida, and Chris Calhoun respectfully request that the Court enter summary judgment in their favor, declare the Resolution unconstitutional, and permanently enjoin its implementation and enforcement.

Respectfully submitted,

Dated:  August 18, 2023

*/s/ Walter S. Zimolong*
WALTER S. ZIMOLONG III, ESQUIRE
JAMES J. FITZPATRICK III, ESQUIRE
Zimolong, LLC
PO Box 552
Villanova, PA 19085-0552
Tele: 215-665-0842

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRATERNAL ORDER OF POLICE   :   No.  2:23-cv-00332-KSM
PENNSYLVANIA LODGE, ET AL.   :
           :
    Plaintiff      :
           :
v.            :
TOWNSHIP OF SPRINGFIELD, ET   :
AL.           :
    Defendants    :

### Certificate of Service

I hereby certify the foregoing has been filed electronically and is available for viewing and downloading from the Electronic Case Filing System of the United States District Court for the Eastern District of Pennsylvania.  I further hereby certify that, in accordance with Fed. R. Civ. P. 5, service has been made upon counsel of record via ECF.

Date:  August 18, 2023        */s/ Walter S. Zimolong, Esquire*