**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PENNSYLVANIA STATE LODGE FRATERNAL ORDER OF POLICE**, et al., | **CIVIL ACTION** |
| Plaintiffs, | **NO. 23-332-KSM** |
| *v.* | |
| **TOWNSHIP OF SPRINGFIELD**, et al., | |
| Defendants. | |

## <u>MEMORANDUM</u>

**Marston, J.**                                                                                    **March 21, 2024**

On January 27, 2023, Plaintiffs, Pennsylvania State Lodge Fraternal Order of Police ("PA

FOP"), Springfield Township Police Benevolent Association ("PBA"), Corporal Christopher

Calhoun, Detective Robert Baiada, and Sergeant Christian Wilbur,[1] filed this lawsuit pursuant to

42 U.S.C. § 1983 against Defendants, the Township of Springfield, seven members of the

Township Board of Commissioners in their official capacity, and the Township manager in his

official capacity (collectively, the "Township").  (Doc. No. 1.)  Plaintiffs sought a declaration

that Township Resolution 1592, "A Resolution Prohibiting the Display of the Thin Blue Line

American Flag on All Township Property," was facially unconstitutional under the First and

Fourteenth Amendments of the United States Constitution, along with a permanent injunction

barring enforcement of the Resolution.  (*Id.*)  On November 13, 2023, the Court granted

Plaintiffs' motion for summary judgment, denied Defendants' cross motion, declared Resolution

---

[1] Although the Complaint refers to each of the individual Plaintiffs merely as an officer with the Springfield Township Police Department (*see* Doc. No. 1 at ¶¶ 3–5), each Plaintiff identified his current rank during discovery (*see* Doc. No. 50 at ¶¶ 2, 5, 8).  The Court refers to the individual Plaintiffs by their rank as identified.

1592 facially unconstitutional, and permanently enjoined Defendants from enforcing its terms. (*See* Doc. Nos. 60, 61.)[2]  Plaintiffs now move for an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.  (Doc. No. 62.)  Defendants oppose that motion to the extent Plaintiffs seek to recover attorneys' fees, but make no objection to Plaintiffs' request for costs.  (Doc. No. 63.) For the reasons discussed below, the motion is granted in part and denied in part.

## I.    LEGAL STANDARD

Section 1988 is a fee shifting statute, which allows the Court to award reasonable attorneys' fees to the prevailing party in an action brought pursuant to § 1983.  *See* 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of section[ ] 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."); *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 163 (3d Cir. 2002) (quoting § 1988(b) and explaining that "although § 1988(b) expressly refers to a district court's discretion, it is well settled that a prevailing plaintiff should recover an award of attorney's fees absent special circumstances" (cleaned up)).  There is no dispute that Plaintiffs, who were granted summary judgment and received permanent injunctive relief, are prevailing parties for purposes of § 1988(b).  *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (explaining that a plaintiff is a prevailing party when they "obtain an enforceable judgment against the defendant from whom fees are sought").

Courts have a "positive and affirmative function in the fee fixing process, not merely a passive one."  *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001); *see also Evans v. Port*

---

[2] Defendants have appealed these and other Orders entered by the Court in this action.  (*See* Doc. No. 64.)  Nevertheless, the Court retains jurisdiction to decide the pending fee request. *See McBride v. Int'l Longshoremen's Ass'n*, 778 F.3d 453, 458 n.6 (3d Cir. 2015) ("The District Court had jurisdiction to rule on attorney's fees while the appeal was pending.").

*Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001) ("It is important that we reiterate our admonition in *Maldonado* that fee requests be subjected to a thorough and searching analysis . . . . [I]t is necessary that the Court 'go line, by line, by line' through the billing records supporting the fee request.").  In determining whether a fee request is reasonable, courts use the "'lodestar' formula, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Maldonado*, 256 F.3d at 184; *accord Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The party seeking attorneys' fees bears the burden of showing that the claimed rates and the number of hours are reasonable.  *See Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."); *United Sates ex rel. Palmer v. C&D Tech., Inc.*, 897 F.3d 128, 139 (3d Cir. 2018) ("In a statutory fees case, the party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable by submitting evidence supporting the hours worked and rates claimed." (cleaned up)).  "The party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee." *United States ex rel. Palmer*, 897 F.3d at 138 (cleaned up).

## II.    DISCUSSION

Plaintiffs request reimbursement for $228,081 in fees and $2,708.38 in costs incurred by their counsel, Attorneys Walter S. Zimolong III and James J. Fitzpatrick III of Zimolong, LLC. (Doc. No. 62.)  Defendants oppose the request for attorneys' fees, arguing that the rates claimed and hours expended by counsel are unreasonable, and in any event, Plaintiffs are not entitled to fee shifting in this case because Plaintiffs' counsel "initiated representation in violation of the Pennsylvania Rules of Professional Conduct." (*See* Doc. No. 63.)  The Court addresses each issue in turn.

**A.      Reasonable Fee**

As stated above, in determining whether the fee requested is reasonable, courts use the "'lodestar' formula, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Maldonado*, 256 F.3d at 184; *see also Hensley*, 461 U.S. at 433.

**1.      <u>Hourly Rate</u>**

The Court begins with the reasonableness of counsels' hourly rates.  "[A] reasonable hourly rate is calculated according to the prevailing market rates in the relevant community." *Maldonado*, 256 F.3d at 184; *see also Blum v. Stenson*, 465 U.S. 886, 895 (1984) ("The statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel.").  "[T]he starting point . . . is the attorney's usual billing rate, but this is not dispositive." *Maldonado*, 256 F.3d at 184 (cleaned up).  The court then "assess[es] the experience and skill of the prevailing party's attorneys and compare[s] their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (cleaned up).  As the prevailing party, Plaintiffs bear the burden of producing "satisfactory evidence in addition to the attorney's own affidavits that the requested hourly rates . . . meet this standard." *Id.*  Courts in this Circuit also consider whether the requested hourly rate is in line with the Community Legal Services ("CLS") fee schedule.[3]  *See id.* at 187 (stating that the CLS fee schedule has been cited approvingly by the Third Circuit).

*a.      Attorney Zimolong*

First, Plaintiffs seek to recover fees for Mr. Zimolong's work at an hourly rate of $715.

---

[3] The most recent version of this fee schedule, which became effective January 19, 2023, can be found here:  https://clsphila.org/about-community-legal-services/attorney-fees/.

(*See* Doc. No. 62 at 8–9.)  Defendants oppose this hourly rate, arguing that it is unwarranted and falls at the extreme end of the CLS range for attorneys with similar experience.  (Doc. No. 63 at 3–4.)

During this litigation, Mr. Zimolong had 20 to 21 years of legal experience.  (Doc. No. 62-3 at 2 ¶ 7; *id.* at 3 (reflecting bar admissions in 2002).)  The CLS fee schedule lists the range of hourly rates for attorneys with 16 to 20 years' experience as $535 to $625 and attorneys with 21 to 25 years' experience as $630 to $715.[4]  *See supra* n.3.  Plaintiffs claim Mr. Zimolong is entitled to recover fees at the high end of this range because he has significant experience litigating civil rights claims like those at issue in this case.  Mr. Zimolong's Declaration and CV show that he is the founder and managing member of Zimolong LLC and has been lead counsel in more than 500 cases in federal and state courts.  (Doc. No. 62-3 at 3–5.)  He has tried multiple cases to verdict and presented argument before the Third Circuit Court of Appeals and the Supreme Courts of Pennsylvania and New Jersey.  (*Id.*)  Some of those cases, like this litigation, involved constitutional and civil rights claims and resulted in reported decisions on First and Fourteenth Amendment issues.  (*Id.* at 4–5.)

Defendants argue that Mr. Zimolong's Declaration inflates his experience and that "[a]ccording to the Eastern District of Pennsylvania dockets, Attorney Zimolong has appeared in sixty-seven (67) cases over his twenty-one (21) year career," and "only eleven (11) of those

---

[4] The Court notes that Plaintiffs have submitted no evidence that they, or any other client, agreed to pay an hourly rate of $715 for Mr. Zimolong's services.  *See Ray v. AT&T Mobility Servs., LLC*, Civil Action No. 18-3303, 2022 WL 1203730, at *6 (E.D. Pa. Apr. 22, 2022) (noting that the plaintiff "fail[ed] to present any evidence showing that any client has willingly agreed to pay" the hourly rates sought); *Holt v. Pennsylvania*, Civil Action No. 10-5510, 2020 WL 2098103, at *14 (E.D. Pa. May 1, 2020) ("Plaintiff has not averred that Puricelli has actually billed any paying client at an hourly rate of $750 or that anyone, including any court authorizing an award in a fee-shifting case, has ever paid him that rate."); *Middlebrooks*, 2019 WL 936645, at *12 ("Returning to Microeconomics 101 in setting a reasonable market price, we may look to what a willing client would pay a willing lawyer.").  Accordingly, the Court gives particular focus to the CLS schedule when reviewing the pending fee petition.

cases are identified as involving civil rights claims, and four (4) of those cases were decided

against Attorney Zimolong's client on a motion."  (Doc. No. 63 at 4.)  The Court is not

convinced by Defendants' argument.  Notably, Mr. Zimolong's CV shows that he has practiced

in numerous federal and state courts, but Defendants only consider his experience in this Court,

which represents around 13% of the cases Mr. Zimolong has prosecuted over his career.

Moreover, even focusing on Mr. Zimolong's cases in this Court, Defendants' numbers suggest

17% of those cases involved civil rights claims, like the claims brought in this action.  That is not

an insubstantial percentage, and the fact that Mr. Zimolong lost a portion of those cases does not,

on its own, undermine his experience litigating similar issues.  Finally, the Court notes that *in*

*this litigation*, the quality of Mr. Zimolong's work reflected an understanding of the facts and the

law that was consistent with many years' experience litigating First Amendment cases, and he

received a favorable result for his clients.  *See Nitkin v. Main Line Health*, CIVIL ACTION NO.

20-4825-KSM, 2022 WL 2651968, at *6 (E.D. Pa. July 8, 2022) ("The Court agrees with Mr.

Koller that it is proper to focus on the quality of the attorney's performance in addition to years

of experience.").

Although the Court is not convinced by Defendants' arguments, we do find that an hourly

rate of $715—which again, falls at the extreme end of the CLS schedule for attorneys with 21 to

25 years' experience—is slightly unreasonable given that Mr. Zimolong had just shy of 21 years'

experience for most of this litigation.[5]  Accordingly, the Court slightly reduces Mr. Zimolong's

hourly rate to $690.  *See Nitkin*, 2022 WL 2651968, at *8 (finding the requested hourly rate of

$390 was unreasonable where the range in the relevant CLS fee schedule was $280 to $360 and

---

[5] Mr. Zimolong was admitted to practice in the fall of 2002 (Doc. No. 62-3 at 3), and the Court entered its Memorandum granting summary judgment in November 2023 (Doc. No. 60).  This means Mr. Zimolong was in his 20th year of practice for most of this litigation.

the attorney's years of experience fell on the low end of that range).

     *b.*  *Attorney Fitzpatrick*

  Next, Plaintiffs seek to recover fees for Mr. Fitzpatrick's work at an hourly rate of $415. (*See* Doc. No. 62 at 9.)  Defendants oppose this hourly rate, arguing that it is unwarranted given Mr. Fitzpatrick's limited experience litigating civil rights cases in the Eastern District of Pennsylvania.  (Doc. No. 63 at 4 ("Attorney Fitzpatrick has only ever entered his appearance in eight (8) other cases before this court.  Of those, only two (2) involved civil rights claims, both of which also included Attorney Zimolong.").)  But, again, this argument is not the death knell that Defendants think it is.  Importantly, Defendants fail to account for counsel's experience in other federal courts and as a Judge Advocate in the United States Army Reserve.  (*See* Doc. No. 62-4.)

  Considering the entirety of Mr. Fitzpatrick's legal career, the Court finds that he had seven to eight years of litigation experience while this action was ongoing.  (Doc. No. 62-4 (attesting to bar admission in 2015).)  The CLS fee schedule lists the range of hourly rates for attorneys with six to ten years' experience as $320 to $415.[6]  *See supra* n.3.  As with Mr. Zimolong, Mr. Fitzpatrick's requested rate of $415 is at the extreme end of that spectrum.  Accordingly, the Court finds it appropriate to reduce the requested rate slightly to $390 per hour, which better reflects Mr. Fitzpatrick's years of experience.  *See Nitkin*, 2022 WL 2651968, at *6 (reducing hourly rate for attorney with around six years' experience, including experience as a Judge Advocate, to a rate at the lower end of the range included in the CLS fee schedule).

        \*   \*   \*

---

[6] Again, Plaintiffs have submitted no evidence that they, or any other client, agreed to pay an hourly rate of $415 for Fitzpatrick's services; accordingly, the Court gives particular focus to the range outlined in the CLS schedule.

In sum, the Court finds that $690 and $390 represent the reasonable hourly rates for Mr. Zimolong and Mr. Fitzpatrick respectively.

### 2. Hours Expended

Next, the Court considers whether Plaintiffs have shown that the hours expended by their attorneys were reasonable.  "In calculating the hours reasonably expended, a court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Maldonado*, 256 F.3d at 184.  "Hours that would not generally be billed to one's own client are not properly billed to an adversary." *Id.* (cleaned up).  Further, "[t]he fact that private lawyers may perform tasks other than legal services for their clients, with their consent and approval, does not justify foisting off such expenses on an adversary under the guise of reimbursable legal fees." *Halderman ex rel. Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995).

Plaintiffs are requesting reimbursement for a total of 395.40 hours.  (Doc. No. 62 at 6.) They argue that this number is reasonable, given that the litigation lasted for nine months and required counsel to prepare a complaint and motion for preliminary injunction, respond to numerous discovery requests, defend five depositions, seek a successful protective order from the Court, and prepare and submit briefs on competing motions for summary judgment, as well as attend oral argument on those motions.  (*Id.* at 7–8.)  Defendants argue that the hours sought are "patently unreasonable" because Plaintiffs seek compensation for administrative tasks, incorrectly billed certain tasks to this litigation, spent excessive amounts of time on other tasks, and "double-billed for myriad communications, emails, text messages, telephone calls, and

meetings between Attorney Fitzpatrick and Attorney Zimolong."  (Doc. No. 63 at 4–9.)[7]  The

Court addresses each issue in turn.

<em>a.      Administrative Tasks</em>

The Court begins with Defendants' argument that Plaintiffs cannot recover for time their

attorneys spent on administrative tasks, such as:  reviewing emails related to court filings,

calendaring court deadlines, communicating with office staff about the case and with court

reporters and paralegals about the scheduling of depositions, drafting and reviewing a form

waiver of service letter, and sending emails to each other about discovery requests.  (*See* Doc.

No. 63 at 5–9.)

The Court agrees with Defendants that filing- and scheduling-related tasks and

communications are administrative in nature, and as such, the fees incurred on those tasks are not

appropriately shifted to Defendants.  *See McGuire v. Neidig*, Civil Action No. 14-1531, 2017

WL 1319930, at *5 (W.D. Pa. Apr. 7, 2017) (reducing the attorney's requested fees for time he

spent on "clerical or administrative tasks," which included telephone calls related to scheduling

and rescheduling an "ENE" and email exchanges related to scheduling mediation); *Roccisano v.*

---

[7] Defendants also argue that "[t]here are myriad other entries for internal review, communication with clients, and other entries for which Defendants have no objective means to identify the actual time spent" and which "demonstrate a clear attempt by Plaintiffs' counsel to artificially inflate the time they actually spent litigating this matter."  (Doc. No. 63 at 9.)  Defendants then argue that "these entries render suspect the entirety of counsel's claimed invoices," such that "the Court has no reliable basis to enter any award."  (*Id.*)  Defendants do not support this argument with citations to the record or to case law.  *See, e.g.*, *Marcavage v. Bd. of Trs.*, CIVIL ACTION NO. 00-5362, 2002 U.S. Dist. LEXIS 19397, at *9 n. 8 (E.D. Pa. Sept. 30, 2002) ("Under our district's local rules, failure to cite to any applicable law is enough to deny a motion as without merit since zeal and advocacy is never an appropriate substitute for case law and statutory authority in dealings with the Court.").  In any event, the Court, after reviewing the time entries submitted by Plaintiffs' counsel, finds no basis for reducing counsels' hours beyond the reductions discussed in the body of this Memorandum.  *See Washington v. Phila. Cnty. Ct. of Comm. Pl.*, 89 F.3d 1031, 1037 (3d Cir. 1996) (finding attorneys billing records were sufficiently specific where the "itemized records specif[ied] the date when the work was performed, the attorney performing the work, the nature of the work (e.g., 'Prepare complaint,' 'Conference with Alan Epstein regarding liability issues'), the amount of time spent and the hourly rate charged for that particular task").

*Township of Franklin*, Civ. Action No. 11-6558 (FLW)(LHG), 2015 WL 3649149, at *9 (D.N.J. June 11, 2015) ("I find that tasks such as mailing letters, forwarding documents by email, checking a calendar, and receiving documents are purely clerical tasks which should not be billed to clients."); *In re Johnson & Johnson Deriv. Litig.*, No. 10-2033(FLW), 2013 WL 11228425, at *49 (D.N.J. June 13, 2013) (reducing time where an attorney "billed 0.2 hours on October 2, 2012, October 8, 2012, October 10, 2012, October 11, 2012 and October 16, 2012 for [the] paralegal to schedule conference calls" because it is a "non-compensable administrative task"); *Holzhauer v. Hayt, Hayt & Landau*, Civil Action No. 11-2336, 2012 WL 3286059, at *8–9 (D.N.J. Aug. 10, 2012) (finding certain communications to be administrative and reducing fees for those tasks, including "faxed continuance letter to court & defendant's counsel" and an email "following up on discovery responses and rescheduling deposition in this matter"); *see also H.W. v. N.Y.C. Dep't of Ed.*, No. 20-CV-10591 (RA), 2022 WL 541347, at *4 (S.D.N.Y. Feb. 23, 2022) ("Further, several billing entries indicate that time was billed for the mere receipt and filing of electronic or paper documents and the review of ECF notifications.  Such activities, which are purely administrative in nature, are generally not compensable."); *MacCartney v. Gordon, Aylworth, & Tami, P.C.*, Case No. 3:18-cv-00568-AR, 2022 WL 1462821, at *6 (D. Or. Apr. 19, 2022), *report & recommendation adopted*, 2022 WL 1462657 (D. Or. May 9, 2022) (noting that the attorney's time included administrative tasks, such as "coordinating court reporters and paying invoices," and recommending that those entries be eliminated from his time because "clerical work [is not] compensable").

Likewise, the Court finds the time counsel spent drafting and reviewing a waiver of service is properly excluded in this case.  Defendants argue that Plaintiffs' counsel spent more hours than necessary preparing and reviewing waivers of service to be sent to each Defendant

because the waiver is a .pdf form that did not require any drafting or editing and "can be completed in seconds by administrative staff." (Doc. No. 63 at 6, 8.) Neither party has provided copies of the waivers of service for the Court to review. Nevertheless, we note that other courts have been reticent to allow recovery of fees for such work because preparation of a waiver of service is administrative in nature. *See Hayward v. Del. Valley High Sch.*, Civil Action No. 10–5383, 2011 WL 1838784, at *2–3 (E.D. Pa. May 13, 2011) (declining to award fees for time spent preparing, reviewing, and mailing "a 'waiver of service' package to defendant" because those were "administrative tasks"); *see also Warren v. Cochrane*, 257 F. Supp. 2d 321, 324–25 (D. Me. 2003) ("[T]he plaintiff's counsel billed time at his full hourly rate . . . for the following clerical tasks: mailing notice of the lawsuit and requests for waivers of service (December 20, 2011, 2.0 hours) . . . . [This time] is deducted from the fees sought."); *Moss v. Pav'r Constr., Inc.*, Case No.: 3:17cv408-RV/EMT, 2018 WL 11355922, at *17–18 (N.D. Fla. Nov. 2, 2018) (finding 1.2 hours that the attorney spent preparing waiver of service letters was unreasonable where "those letters are all *standard form letters* ordinarily handled by secretaries or paralegals—not attorneys billing $350 per hour"). *But see Smith v. Phila. Hous. Auth.*, No. Civ.A. 98–2874, 1999 WL 54565, at *4 (E.D. Pa. Jan. 29, 1999) (finding one hour was a reasonable amount of time for an attorney to "prepare a civil action cover sheet, a designation form, two summons, a case management form, waivers of service, *and* a service letter" (emphasis added)). Because this task is typically considered administrative and nonrecoverable, and because Plaintiffs have failed to show compensation for this task is reasonable in this case, the Court also excludes all time counsel spent preparing and reviewing the waivers of service.

The Court declines, however, to exclude the 0.1 hours that Mr. Fitzpatrick spent sending "draft interrogatories [to WSZ] for review." Defendants assert that "[t]his is an internal,

administrative task," but they do not explain how this task is clerical.  (Doc. No. 63 at 6.)  And the Court does not independently find a junior attorney emailing draft discovery requests to a senior attorney to be a purely administrative task.

Accordingly, the Court reduces Mr. Zimolong's time by 2.4 hours and Mr. Fitzpatrick's time by 4.3 hours for the entries reflected in the table below:

| Date | Description | Time |
|------|-------------|------|
| **Mr. Zimolong's Time** | | |
| 2.3.2023 | Preparation 11 Waiver of Service of Summons forms for defendants and send to WSZ for review and approval[8] | 0.8 |
| 3.15.2023 | Calendar deadlines for case management | 0.3 |
| 5.23.2023 | Schedule deposition with paralegal | 0.1 |
| 5.24.2023 | Telephone call to [c]heck on status of confirming court reporter | 0.3 |
| | Prepare email to Karasch to secure court reporter for witness on 6[.]12[.]23 | 0.3 |
| 6.8.2023 | Prepare email to Karasch & Associates to advise that the time for the deposition on 6.12.23 was moved to 9:00 a.m. | 0.2 |
| 6.9.2023 | Telephone call with Joe from Karasch requesting of [sic] court reporter for deposition on 6.12.23 | 0.2 |
| 7.6.2023 | Prepare email to WSZ and JJF regarding invoice from ERSA Court Reporters for Chris Calhoun's transcript[9] | 0.2 |
| | **Total** | 2.4 |

[8] In the alternative, this appears to be an email that was sent to Mr. Zimolong and not a task performed by him.

[9] Again, this appears to be an email that was sent to Mr. Zimolong and not a task performed by him.

| Mr. Fitzpatrick's Time | | |
|---|---|---|
| 1.27.2023 | Review ECF filing email | 0.1 |
|  | Review email from Susan Silenzi re: filing of complaint | 0.1 |
| 1.30.2023 | Review email from Susan | 0.1 |
| 1.31.2023 | Confer with Susan Silenzi (assistant) on case updates | 0.1 |
| 2.1.2023 | Review email from Susan | 0.1 |
| 2.1.2023 | Review additional email from Susan | 0.1 |
|  | Compose email to Susan re: ECF notifications on case | 0.1 |
| 2.3.2023 | Review email from Susan on Service of Summons | 0.1 |
|  | Review ECF email | 0.1 |
|  | Review draft waiver of summons | 0.1 |
|  | Review [WSZ]'s edits to draft waiver of summons | 0.1 |
|  | Review email [f]rom [WSZ] on waiver of summons edits | 0.1 |
|  | Review drafts of individual waiver of summons for all defendants to be sent to opposing counsel for approval | 0.2 |
|  | Review email from [WSZ] RE: final waivers of service for all defendants | 0.1 |
| 2.7.2023 | Review ECF email from court | 0.1 |
|  | Review email from Susan | 0.1 |
| 2.16.2023 | Review ECF email | 0.1 |
|  | Review ECF email | 0.1 |
| 2.20.2023 | Review email from Susan | 0.1 |
|  | Compose email to Susan | 0.1 |
| 2.21.2023 | Review ECF email from court | 0.1 |
| 3.14.2023 | Review ECF confirming filing of response in opposition to defendants motion to dismiss | 0.1 |

| 4.7.2023 | Review ECF email from the court RE: Judge's opinion | 0.1 |
|---|---|---|
| | Review ECF email from the court RE: Judge's order | 0.1 |
| 5.9.2023 | Confer with Susan on logistics for remote deposition | 0.1 |
| 5.10.2023 | Compose email to court reporter for expedited transcript | 0.3 |
| 5.11.2023 | Review email from court reporter | 0.1 |
| | Compose email to court reporter | 0.1 |
| 5.22.2023 | Review ECF email from court | 0.1 |
| 6.8.2023 | Review email from Susan RE: Taylor deposition | 0.1 |
| 6.16.2023 | Review email from court reporter | 0.1 |
| | Compose email to court reporter | 0.1 |
| 6.27.2023 | Review ECF emails | 0.1 |
| 7.10.2023 | Review ECF email | 0.1 |
| 9.15.2023 | Review various [ECF] notification emails from court | 0.2 |
| 9.23.2023 | Review ECF email | 0.1 |
| 9.26.2023 | Review [ECF] email | 0.1 |
| 9.28.2023 | Review [ECF] email | 0.1 |
| 11.13.2023 | Review ECF emails from court | 0.1 |
| | **Total** | 4.3 |

### b.    *Improper Billing*

Next, Defendants argue that time Plaintiffs' counsel spent speaking to the media, working on other cases, sending emails to themselves, drafting a representation agreement, preparing Sergeant Wilbur for his deposition, and communicating with nonparties, should be eliminated because those hours are not properly billed in connection with this litigation.  (*See* Doc. No. 63 at 5–9.)  The Court addresses each category in turn.

14

First, Defendants object to the time counsel spent speaking with various news outlets. With one exception, the Court agrees this time is not recoverable.  *See Dee v. Borough of Dunmore*, 548 F. App'x 58, 60–61 (3d Cir. 2013) (holding that the "District Court did not abuse its discretion" when it "removed 2.2 hours that Pollick spent speaking with the news media because that time was not compensable").  The Court declines to exclude 0.2 hours that Mr. Fitzpatrick spent reviewing "various emails from Chestnut Hill Local reporter Tom Beck" because Beck's article was submitted to the Court and discussed at an early status conference.[10]

Second, Defendants point to at least three entries that seem to involve work performed for other matters (*see* Doc. No. 63 at 8–9), which obviously cannot be recovered in this action. *See Hamill v. N. Wildwood City*, Civil Action No. 10–6587 (JBS/KMW), 2014 WL 2812048, at *5 (D.N.J. June 23, 2014) (excluding time that the attorney spent on "[r]eview of email from attorney offering to meet only if Ed Law appears" because "Ed Law was a plaintiff in another case").  Plaintiffs have not responded to this argument or otherwise shown that the entries are for work performed in connection with this litigation.  Accordingly, the Court excludes these entries as well.

Third, Defendants ask the Court to strike two entries for emails that Attorney Zimolong allegedly sent to himself.  (Doc. No. 63 at 8.)  On their face, these entries suggest the relevant emails were sent to Mr. Zimolong by someone else, such that neither task was performed by him. The first email states, "Proofread response to motion to dismiss complaint and send revisions to WSZ via email."  (Doc. No. 62-1 at 30.)  And the second states, "Prepare email to WSZ re status

---

[10] The article discussed this action and quoted a former member of the Township Board of Commissioners for the incorrect proposition that Plaintiffs "explicitly sought [Judge] Marston out to hear this case."  *See* Tom Beck, *Police Fight Back on Blue Lives Matter*, CHESTNUT HILL LOCAL (Feb. 2, 2023).

of case and confirm that it is still going forward 4.25.23." (*Id.*)  Because Plaintiffs do not

respond to Defendants' argument or otherwise explain why this time is appropriately assigned to

Mr. Zimolong, the Court agrees that Plaintiffs have failed to show this time was reasonably

expended.  *Cf. Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 903 F.3d 396, 398–99 (3d Cir. 2018)

("Here, it does not even require added scrutiny to discover further problems with the fee petition.

For one, many of the time entries submitted were so vague that there is no way to discern

whether the hours billed were reasonable.").  Accordingly, these hours are also excluded.

The Court declines to exclude the remaining three categories of fees challenged in this

section because in the context of this litigation, such time appears to have been reasonably spent.

For example, Defendants argue that the Court should eliminate the time Plaintiffs' counsel spent

drafting and reviewing a representation agreement because Plaintiffs testified that they did not

have a fee agreement with counsel.  (Doc. No. 63 at 5.)  But a representation agreement may be

broader than a fee agreement.  Indeed, it is good practice for an attorney to outline the scope of

their representation in writing, regardless of any additional agreement as to the fee to be paid by

the client, because doing so ensures the attorney and the client know the extent of that

representation.  *Cf.* Pa. R. Prof. Conduct 1.1, cmt. 5 ("An agreement between the lawyer and the

client regarding the scope of the representation may limit the matters for which the lawyer is

responsible."); Pa. R. Prof. Conduct 1.2(a) ("[A] lawyer shall abide by a client's decisions

concerning the objectives of representation and, as required by Rule 1.4, shall consult with the

client as to the means by which they are to be pursued."); Pa. R. Prof. Conduct 1.2, cmts. 6, 8

(discussing "agreements concerning a lawyer's representation of a client").  Moreover, other line

items in Mr. Fitzpatrick's billing records support the notion that Plaintiffs had a representation

agreement in this case.  (*See, e.g.*, Doc. No. 62-1 at 1 ("Review signed representation agreement

from Christian Wilbur"); *id.* ("Review signed representation agreement from Springfield PBA").)  Accordingly, the Court rejects Defendants' objection as to these time entries.

Similarly, Defendants object to counsels' entry for deposition preparation with Sergeant Wilbur—amounting to less than two hours— because Sergeant Wilbur testified during his personal deposition that the only thing he did to prepare for it was review Corporal Calhoun's deposition transcript.  (Doc. No. 63 at 7–8.)  The Court will not read a nefarious intent into the billing records based on a stray comment by Sergeant Wilbur during substantive discovery in this matter.  (*See* Wilbur Dep. Tr. at 11:4–13 ("[Q.] Mr. Wilbur, did you review anything in preparation for your deposition today?  A. Just the Interrogatories and Calhoun's deposition.  Q. You read the entirety of Chris Calhoun's deposition transcript?  A. Yes.  Q. Did you do anything else to prepare for your deposition today?  A. No.") (attached to Defendants' motion for summary judgment as Exhibit "G") (Doc. No. 46-9).)  Notably, Sergeant Wilbur was never explicitly asked if he met with his attorneys to prepare for his depositions.  (*See generally* Doc. Nos. 46-9, 46-10.)

In addition, the Court finds it noteworthy that Sergeant Wilbur gave two depositions in this case—one in his personal capacity and one as a corporate designee.  (*See* Doc. Nos. 46-9, 46-10.)  There is nothing in the record to suggest Sergeant Wilbur did *not* meet with counsel to prepare for his corporate designee deposition.  And the Court assumes that such preparation was necessary, *see, e.g.*, *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 216 (E.D. Pa. 2008) ("[A] corollary to the corporation's duty to designate a Rule 30(b)(6) witness is that the corporation must prepare its designee to be able to give binding answers on its behalf and perform a reasonable inquiry for information that is noticed and reasonably available to it." (cleaned up)), and that approximately two hours is a reasonable amount of time for counsel to

bill for it, *see Reynolds v. U.S.X. Corp.*, 170 F. Supp. 2d 530, 532 (E.D. Pa. 2001) (finding "reasonable . . . the claims for paralegal fees and work related to discovery, the appeal from arbitration, *depositions including preparation time*, the response to defendant's summary judgment motion, and trial" (emphasis added)); *Carney v. Int'l Broth. of. Elec. Workers Loc. Union 98 Pension Fund*, No. CIV.A. 00–6270, 2003 WL 21700575, at *1 (E.D. Pa. July 23, 2003) ("[W]e determine that Carney would be awarded the attorneys' fees for 101.1 hours of time spent in connection with the preparation and review of the depositions in this matter."); *cf. M&N Aviation, Inc. v. United Parcel Serv., Inc.*, Civil Action No. 2010–083, 2014 WL 1128225, at *8 (D.C. V.I. Mar. 21, 2014) (finding under Virgin Islands' fee shifting statute that time the attorneys spent "preparing witnesses that they *may* call at trial" was properly charged to the opposing party because that work "contributed to th[e prevailing party's] complete victory[,] was not frivolous, nor did it generate undue fees"); *Ceglia v. Zuckerberg*, No. 10–CV–00569A(F), 2012 WL 5988637, at *5–7 (W.D.N.Y. Nov. 29, 2012) (finding Plaintiff was "required to pay the costs of Defendants' attorneys and expert witnesses time spent preparing for the [seven] canceled depositions," which included more than $30,000 in fees for witness preparation) Accordingly, the Court rejects Defendants' objection as to these time entries as well.

Last, Defendants argue that the Court should strike 0.1 hours that Mr. Fitzpatrick spent communicating with potential plaintiffs. (Doc. No. 63 at 5.) But such conversations may have been necessary in this case, where there were two organizations and multiple individually named plaintiffs, and where the Court and the parties repeatedly dealt with issues of organizational standing. (*See, e.g.*, Doc. Nos. 40, 60.) In that context, it is reasonable to think that Plaintiffs' counsel may have, for example, spoken with other members of the PBA or other members of the Township to be potential named Plaintiffs. Accordingly, the Court declines to exclude this time.

In sum, the Court excludes most of the time Plaintiffs' counsel spent speaking to the media, working on unrelated matters, and sending emails to themselves.  The Court reduces Mr. Zimolong's time by 1.9 hours and Mr. Fitzpatrick's time by 0.5 hours for the entries reflected in the table below:

| Date | Description | Time |
|------|-------------|------|
| **Mr. Zimolong's Time** | | |
| 3.13.2023 | Proofread response to motion to dismiss complaint and send revisions to WSZ via email | 0.3 |
| 3.17.2023 | Draft preliminary notice to the owner of intent to file lien | 0.5 |
| 3.29.2023 | Prepare email to WSZ re status of case and confirm that it is still going forward 4.25.23 | 0.4 |
| 5.10.2023 | Continue making edits to preliminary objections to complaint | 0.2 |
| 9.15.2023 | Conference with Brian Seifert Swiss Re claims agent | 0.5 |
| | **Total** | 1.9 |
| **Mr. Fitzpatrick's Time[11]** | | |
| 2.2.2023 | Listen and take notes on co-counsel media appearance discussing relevant updates on litigation | 0.3 |
| 2.8.2023 | Confirm [WSZ] radio appearance to discuss case | 0.2 |
| | **Total** | 0.5 |

   *c.* *Excessive Hours*

Next, Defendants argue that Plaintiffs' counsel spent an excessive amount of time drafting interrogatories and reviewing discovery requests, and therefore, those hours should be

---

[11] Defendants misleadingly suggest that 0.5 hours should be excluded from Mr. Fitzpatrick's time for "Interview on Dom Giordano radio show."  (Doc. No. 63 at 5.)  But a review of the actual time entry shows that Mr. Fitzpatrick was listening to a "recording of Springfield Township Commissioner Jim Lee's interview" on the "Dom Giordano radio show," which, on its face, appears relevant to this litigation.  (Doc. No. 62-1 at 1.)

reduced or excluded.  (*See* Doc. No. 63 at 5–9.)[12]  The Court addresses each category in turn.

First, Defendants argue that the preparation of 18 interrogatories should not have taken Mr. Fitzpatrick, "an experienced attorney," 4.9 hours to complete.  (Doc. No. 63 at 7.)  But approximately five hours is not an unreasonable amount of time given the number of interrogatories, Mr. Fitzpatrick's limited experience litigating First Amendment issues, and the complexity of this civil rights action.  *See Taormina v. Heritage Envt'l Servs., Inc.*, Civil Action No. 16-1791, 2017 WL 3912353, at *5 (W.D. Pa. Sept. 5, 2017) (finding 0.6 hours was not an unreasonable amount of time for counsel to spend drafting a second set of interrogatories that included only one inquiry); *Lee v. Best Am. Invs., LLC*, No. 3:22-cv-300-BJD-PDB, 2023 WL 4931040, at *5 (M.D. Fla. May 8, 2023) (finding the plaintiff "satisfied his burden of showing the hours spent by his attorney," which included five hours spent "drafting discovery requests," was "reasonable"); *cf. Himmel v. Country in N.Y., LLC*, No. 09 Civ. 5073(LMM)(DF), 2011 WL 31045, at *1, *3 (S.D.N.Y. Jan. 4, 2021) (finding reasonable 8.8 hours that an attorney with more than 20 years' experience spent "on tasks including communications with counsel, drafting discovery requests and interrogatories, and attending court conferences").  Neither is it unreasonable for Mr. Zimolong, the more experienced of Plaintiffs' two attorneys, to have spent two hours finalizing Plaintiffs' interrogatories and requests for production after Mr. Fitzpatrick prepared the initial draft requests.  *Cf. Topness v. Cascadia Behavioral Healthcare*, Case No. 3:16-cv-2026-AC, 2017 WL 8895626, at *8 (D. Or. Oct. 17, 2017) ("Crediting as true

---

[12] Defendants also object to 0.3 hours that Mr. Fitzpatrick spent reviewing the Court's automatic email notifications about the filing of an order or opinion, where Mr. Fitzpatrick separately billed for substantively reviewing the relevant order or opinion.  (Doc. No. 63 at 6–7.)  Defendants argue that the hours claimed for reviewing these email notifications are excessive and duplicative of the time that Mr. Fitzpatrick spent substantively reviewing the document attached to the email.  (*Id.*)  Because the Court has already excluded these entries as unrecoverable administrative tasks, *see supra* Part II.A.2.a., we do not consider the issue further in this section.

Defendants' representation that Topness's discovery requests were 'routine,' and in light of the Firm's specialty and likely use of requests similar to that used in prior cases, . . . Judd should not have spent more than 6 hours drafting the discovery requests and Crispin should not have billed more than 2.5 hours to review, edit, and finalize the requests.").

Second, Defendants assert that the Court should exclude one hour that Mr. Fitzpatrick spent reviewing discovery requests on March 9, 2023, where those discovery requests had previously been reviewed on February 22 and 24, 2023.  (Doc. No. 63 at 6.)  But a closer review of the billing records shows that Mr. Fitzpatrick billed one hour for not only reviewing the requests again, but also for composing emails to each Plaintiff about the requests that were specifically directed to each of them.  (*See* Doc. No. 62-1 at 12 (charging 0.2 each for review and composition of emails to the PA FOP, PBA, Corporal Calhoun, Detective Baiada, and Sergeant Wilbur).)  Because the nature of the tasks performed on each date is substantively different, the Court declines to exclude the hours reported by Mr. Fitzpatrick on March 9, 2023.

Accordingly, the Court rejects Defendants' argument that Plaintiffs' counsels' hours are excessive.

d.    <em>Redundant Billing</em>

Last, Defendants take issue with a practice that they refer to as "double billing."  (Doc. No. 63 at 5–9.)  Essentially, Defendants argue that Plaintiffs cannot recover time billed by both attorneys for communications amongst themselves.  (*Id.*)  To the extent both attorneys billed for the same communication when that communication occurred solely between Mr. Zimolong and Mr. Fitzpatrick, the Court will disallow the hours billed by Mr. Fitzpatrick.  *See Shelton v. Restaurant.com Inc.*, Civil Action No. 10-824 (MAS) (DEA), 2016 WL 7394025, at *8 (D.N.J. Dec. 21, 2016) ("Plaintiffs' billing records reflect excessive inter- and intra-firm communications.  In particular, counsel billed for informal meetings and discussions amongst

21

themselves, and each attorney billed separately for many of the same discussions, thereby increasing the attorneys' fees.  In addition, counsel billed for every e-mail correspondence with co-counsel on the matter.  The Court will, therefore, disallow the hours billed by attorneys with the lower hourly rate when two attorneys from the same firm billed for the same telephone conference or informal meeting and discussion."); *see also Topness*, 2017 WL 8895626, at *6 ("In general, when attorneys hold a telephone or personal conference, good billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys." (quotation marks omitted)).

Accordingly, the Court reduces Mr. Fitzpatrick's time by 7.2 hours for the entries reflected in the table below:

| Date | Description | Time |
|------|-------------|------|
| **Mr. Fitzpatrick's Time** | | |
| 1.15.2023 | Conference with [WSZ] regarding potential first amendment case and details of legal research | 0.4 |
| 1.17.2023 | Confer with WSZ on case tactics and strategy and thoughts on meeting with clients | 0.5 |
| 1.18.2023 | Confer with WSZ on fees awards under Section 1983 | 0.3 |
| 1.20.2023 | Confer with WSZ on legal research needed for complaint and brief, declarations | 0.2 |
| 1.21.2023 | Confer with [WSZ] on details of FOP plaintiffs | 0.1 |
| 1.24.2023 | Conference with [WSZ] to discuss legal research and case law re: standing | 0.5 |
| 1.26.2023 | Conference with [WSZ] on edits to complaint and declarations | 0.3 |
| 1.30.2023 | Conference with [WSZ] | 0.3 |
| 2.7.2023 | Conference with [WSZ] on initial disclosures | 0.2 |
| 2.24.2023 | Confer with [WSZ] on deposition scheduling | 0.2 |

| 3.17.2023 | Conference with [WSZ] on discovery | 0.2 |
| 3.21.2023 | Confer with [WSZ] on discovery | 0.1 |
| 3.24.2023 | Conference with [WSZ] on declarations of plaintiffs needed for Monday filing | 0.4 |
| 4.13.2023 | Conference with [WSZ] on discovery requests to defendants | 0.2 |
| 5.1.2023 | Confer with [WSZ] on discovery schedule, case tactics, and updates | 0.2 |
| 5.1.2023 | Email to [WSZ] RE: discovery request responses | 0.1 |
| 5.10.2023 | Conference in office with [WSZ] about legal research, case law, and tactics | 1.5 |
| 5.17.2023 | Conference with [WSZ] on discovery; witness prep; legal research | 1.0 |
| 5.30.2023 | Conference with [WSZ] RE: discovery and depositions | 0.2 |
| 8.18.2023 | Conference with [WSZ] on defendants MSJ | 0.3 |
| | **Total** | 7.2 |

\*      \*      \*

With those reductions accounted for, a revised chart of the reasonable fees incurred by Plaintiffs' counsel is included below:

| Name | Rate | Hours | Fees |
|------|------|-------|------|
| Walter Zimolong | $690 | 209 | $144,210 |
| James Fitzpatrick | $390 | 170.1 | $66,339 |
| | | **Total** | **$210,549** |

## B.     Rules of Professional Conduct

In addition to challenging the reasonableness of the requested rate and hours expended by Plaintiffs' counsel, Defendants also argue that fee shifting is inappropriate in this case because

Mr. Zimolong and Mr. Fitzpatrick initiated their representation in a manner that violates

Pennsylvania Rule of Professional Conduct 7.3(a).  (Doc. No. 63 at 2–3.)  This argument borders

on frivolous.

      As an initial matter, Defendants do not cite any Pennsylvania authority—or indeed,

authority from any jurisdiction—where an attorney was denied fees or a fee was reduced in the

fee-shifting context because the attorney wrongfully solicited the client.  And as Plaintiffs note in

their reply brief, the preamble to the Pennsylvania Rules of Professional Conduct expressly

dissuades using the rules as "procedural weapons" in the adversarial context:

> Violation of a Rule should not itself give rise to a cause of action
> against a lawyer nor should it create any presumption in such a case
> that a legal duty has been breached. In addition, *violation of a Rule
> does not necessarily warrant any other non-disciplinary remedy*,
> such as disqualification of a lawyer in pending litigation. The Rules
> are designed to provide guidance to lawyers and to provide a
> structure for regulating conduct through disciplinary agencies. They
> are not designed to be a basis for civil liability. Furthermore, *the
> purpose of the Rules can be subverted when they are invoked by
> opposing parties as procedural weapons.* The fact that a Rule is a
> just basis for a lawyer's self assessment, or for sanctioning a lawyer
> under the administration of a disciplinary authority, *does not imply
> that an antagonist in a collateral proceeding or transaction has
> standing to seek enforcement of the Rule.* Accordingly, nothing in
> the Rules should be deemed to augment any substantive legal duty
> of lawyers *or the extra disciplinary consequences* of violating such
> a duty.

Pa. R. Prof. Conduct, at Preamble ¶ 19 (emphases added); *see also Molitoris v. Woods*, 618 A.2d

985, 990 n.5 (Pa. Super. Ct. 1992) ("Borden also argues that the representation was void as

against public policy due to Rothman Gordon's alleged violations of Rules 1.7(a) and 7.3 of the

Pennsylvania Rules of Professional Conduct.  These arguments are completely meritless.  [O]ur

Supreme Court [has] reaffirmed the principle stated in the Preamble to the Rules of Professional

Conduct, that neither the rules, nor the Code of Professional Responsibility previously in effect,

*per se* create a legal cause of action in clients or other private parties for a violation thereof."); *cf.*

*In re: Moon*, BAP Nos. NV-20-1144-BTaF, *et al.*, 2021 WL 62630, at *5 n.6 (9th Cir. Jan. 7, 2021) (rejecting contention that a fee award should be reduced because the attorney failed to have a written fee agreement as required by the Nevada Rules of Professional Conduct).

Even assuming that a reduction of a fee award as a sanction for professional misconduct may be appropriate in some cases,[13] there is no evidence that Plaintiffs' counsel violated Rule 7.3(a) here.  Rule 7.3(a) states:

> A lawyer shall not solicit in-person or by intermediary professional employment from a person with whom the lawyer has no family or prior professional relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless the person contacted is a lawyer or has a family, close personal, or prior professional relationship with the lawyer. The term 'solicit' includes contact in-person, by telephone or by real-time electronic communication, but, subject to the requirements of Rule 7.1 and Rule 7.3(b), does not include written communications, which may include targeted direct mail advertisements.

Pa. R. Prof. Conduct 7.3(a).  This Rule recognizes that "[t]here is a potential for abuse" when a lawyer makes "a direct[,] interpersonal," unsolicited offer to represent a client because the client

---

[13] Courts in other jurisdictions have reduced or denied a fee award for attorneys who willfully violated the rules of professional conduct governing conflicts of interest or who made material misrepresentations to the court.  *See, e.g.*, *Ark. Tchr. Ret. Sys. v. State Street Bank & Tr. Co.*, 512 F. Supp. 3d 196, 213 (D. Mass. 2020) ("[T]he court now finds that the submissions of [class counsel,] Labaton and Thornton[,] in support of the request for an award of $75,000,000 were replete with material false and misleading statements.  Labaton and Thornton in many respects violated Federal Rule of Civil Procedure 11(b) and related Massachusetts Rules of Professional Conduct.  This misconduct makes an award at the lower end of the presumptive reasonable range—20%—most appropriate."); *McGrane v. Howrey, LLP*, Case No. 14-cv-05111-JD, 2015 WL 6126792, at *1 (N.D. Cal. Oct. 19, 2015) (affirming bankruptcy court's denial of an award of attorney's fees where counsel "acted adversely to [its prior client] on several occasions in violation of professional ethics, including California Rules of Professional Conduct 3-310(E)," which states, "an attorney 'shall not,' without the 'informed written consent' of the former client, accept employment adverse to a former client where through the prior engagement the attorney has obtained confidential information material to the employment"); *Consol. Paving, Inc. v. County of Peoria*, No. 10–CV–1045, 2013 WL 916212, at *6 (C.D. Ill. Mar. 8, 2013) (excluding from fee award under § 1988 the time that the attorney spent preparing the fee petition because five of the petition's 13 pages were "lifted nearly verbatim from the Seventh Circuit's opinion in *Dupuy v. Samuels*, yet this case is not cited anywhere in Plaintiff's Petition," and justifying the reduction by saying, "[p]lagiarism is a serious issue, and several courts have found such behavior unacceptable and a violation of the Rules of Professional Conduct").

"may already feel overwhelmed by the circumstances giving rise to the need for legal services, [and] may find it difficult fully to evaluate all available alternatives with reasoned judgment and appropriate self-interest in the face of the lawyer's presence and insistence upon being retained immediately." *Id.*, cmt. 2.  In short, "[t]he situation is fraught with the possibility of undue influence, intimidation, and over-reaching."  *Id.*

Defendants argue that Plaintiffs' counsel violated Rule 7.3(a) because Sergeant Wilbur, testifying as the PBA's corporate designee, stated that he first spoke with Plaintiffs' counsel during an unsolicited phone call initiated by Mr. Fitzpatrick:

> Q:   Chris Calhoun testified that he was introduced to your attorney, current attorneys, by you.  How did you become aware of Mr. Zimolong and Mr. Fitzpatrick?
>
> A:   Mr. Fitzpatrick reached out by phone.
>
> Q:   And that was an unsolicited conversation, unsolicited communication?
>
> A:   Yes.

(Wilbur Dep. Tr. at 36:17–24 (attached to Defendants' motion for summary judgment as Exhibit "H") (Doc. No. 49-10).[14])  Defendants then reason that because Plaintiffs have requested "almost $230,000 in fees," Plaintiffs' counsel was "clearly . . . motivated by pecuniary gain" and the unsolicited telephone call was improper.  (Doc. No. 63 at 3.)

Putting aside the fact that an attorney's lawful request for fees is not evidence, on its own, that the attorney acted in bad faith or solely for purposes of "pecuniary gain," *see Rivera v. Brickman Grp., Ltd.*, No. Civ.A. 05-1518, 2006 WL 680926, at *2 (E.D. Pa. Mar. 10, 2006) ("There is no evidence that plaintiffs' counsel will be motivated by pecuniary gain in contacting

---

[14] Despite stating that Sergeant Wilbur's deposition was attached as an exhibit to the opposition brief (*see* Doc. No. 63 at 3 n.1), no such transcript was included.  Accordingly, the Court looks to the transcript submitted with Defendants' motion for summary judgment.  (*See* Doc. No. 46-10.)

prospective plaintiffs.  The fact that plaintiffs' counsel seeks statutory fees does not constitute

such evidence."), the Court is extremely wary of discounting a fee award in its entirety based

solely on the stray statements of a single Plaintiff during a deposition focused on the merits of

the underlying dispute, *not* the origination of the attorney-client relationship.  Indeed, a

Declaration by Sergeant Wilbur, attached to Plaintiffs' reply brief, shows why it is important for

the Court to consider the entire scope of the representation.[15]  Notably, the Declaration states that

"[f]or months before the passage of Resolution 1592 [the PBA] was actively seeking counsel"

regarding the issues raised in this litigation because the Township had threatened litigation

against the PBA.  (Doc. No. 66-1 at ¶¶ 2–3.)  After the Township passed Resolution 1592,

Sergeant Wilbur "spoke to a colleague, who recommend[ed] that [Sergeant Wilbur] speak with

Attorney James J. Fitzpatrick of Zimolong LLC about the matter."  (*Id.* at ¶ 4.)  Wilbur told the

"colleague that [he] was interested in speaking with Attorney Fitzpatrick and told [the] colleague

Attorney Fitzpatrick could call [Wilbur's] cell phone number" and authorized the "colleague to

---

[15] Defendants have moved to strike the Declaration as a sham affidavit.  (*See* Doc. No. 68.)  This argument is baseless.  For one, Defendants have not cited any cases applying the sham affidavit doctrine outside of the summary judgment context.  *See Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004) ("[A] party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict.").  And even if the Court were to apply the doctrine in the context of a petition for fees, we find, as explained in the body of this Memorandum, that Sergeant Wilbur's Declaration adequately explains the conflict between his earlier deposition testimony and the Declaration.  *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 254 (3d Cir. 2007) (explaining that the Third Circuit has "adopted a more flexible approach" to the sham affidavit doctrine, which considers whether "there is independent evidence in the record to bolster an otherwise questionable affidavit" and also whether the affiant has offered "a satisfactory explanation for the conflict between the prior deposition and the affidavit" before striking the affidavit as a sham (quotation marks omitted)); *Baer*, 382 F.3d at 624 ("[I]t is clear that merely because there is a discrepancy between deposition testimony and the deponent's later affidavit a district court is not required in all cases to disregard the affidavit.").  Accordingly, the motion to strike is denied.  The Court also grants Plaintiffs' request to include in the fee award the fees that Mr. Zimolong incurred briefing the motion to strike.  (*See* Doc. No. 70 at 6.)  Mr. Zimolong spent 4.5 hours preparing Plaintiff's response brief.  Multiplied against Mr. Zimolong's approved rate of $690 per hour, that brings the total fees incurred on this motion to $3,105 and the total fees awarded to Plaintiffs in this Memorandum to $213,654.

provide [the cell phone number] to Attorney Fitzpatrick." (*Id.* at ¶ 5; *see also id.* at ¶ 14 (attesting that his "cell phone number is not publicly available" and that Mr. Fitzpatrick "did not 'cold call'" him).) Considering Sergeant Wilbur's Declaration and deposition testimony together, the Court can see how Sergeant Wilbur would consider Mr. Fitzpatrick's call "unsolicited" in the sense that Sergeant Wilbur did not contact Mr. Fitzpatrick first. But that does not mean the call violated Rule 7.3(a).

Moreover, Sergeant Wilbur's deposition shows Mr. Fitzpatrick's call did not arise from a "situation [ ] fraught with the possibility of undue influence, intimidation, and over-reaching." *See* Pa. R. Prof. Conduct 7.3(a), cmt. 2. To the contrary, the PBA was actively seeking representation at the time, and during the call "Attorney Fitzpatrick . . . did not pressure [Wilbur] to engage him immediately." (Doc. No. 66-1 at ¶ 9.) Indeed, Plaintiffs' counsel was not engaged until later, after the members of the PBA approved the engagement through a vote of the members. (*Id.* at ¶¶ 10–12.) *Contra Rivera v. City of Philadelphia*, No. CIV. A. 97–CV–1130, 1998 WL 376097, at *1 (E.D. Pa. July 1, 1998) ("[I]t appears that [the plaintiff] was solicited to be a party in a manner that violates Rule of Professional Conduct 7.3," where the plaintiff "testified at her deposition that [her counsel] called her and told her that she had a claim against Delta and the City" and that "she had not intended to sue anyone before [counsel] contacted her.").

Considering Wilbur's deposition testimony and Declaration together, the Court finds Attorney Fitzpatrick did not engage in unsolicited communications in violation of Rule 7.3(a). Defendant's objection to the fee petition on this basis is denied.

## III.    CONCLUSION

Defendants' motion to strike is denied. Plaintiffs' motion for attorney's fees is granted in part and denied in part. The hourly rates and hours expended are reduced as explained in this

Memorandum.  Plaintiffs are awarded $213,654.00 in attorneys' fees and $2,708.38 in costs.  An appropriate order follows.